DENOYER ET AL., APPELLANTS, *v.*
LAMB ET AL., APPELLEES.

(No. C-830938—Decided
December 5, 1984.)

*Rendigs, Fry, Kiely & Dennis* and *John W. Hust,* for appellants.

*Dale G. Schmidt,* for appellee Gordon Lamb.

*Gustin & Lawrence Co., L.P.A., James W. Gustin, Paxton & Seasongood* and *Gerald W. Simmons,* for appellee Murphy Development Company.

BLACK, J. What is the measure of damages when a trespasser cuts and removes trees from residential and recreational land, in the process destroying other trees and damaging the land with heavy equipment? The trial court excluded evidence of the costs of cleanup and restoration and restricted plaintiffs-appellants (hereinafter "plaintiffs") to proof of the timber or "stumpage" value of the cut and destroyed trees. We agree with plaintiffs that this was error.

I

Four parcels were damaged by defendants' cutting of trees. Three of the parcels were residential lots on Turgot Drive in Evendale; they were part of a subdivision developed and

marketed by defendant-appellee Murphy Development Company ("Murphy"). They fronted from eighty-five to ninety-five feet on Turgot Drive and extended in a fan-like manner about six hundred feet to their rear lot lines, which comprised a common boundary with the fourth parcel damaged by the cutting. That fourth parcel fronted on Reading Road and backed up to the Turgot Drive lots. At the time of the harvest, it was not used for residential purposes, the former residence having been razed, but the parcel was used for recreational purposes by the several members of the Apking family who had inherited it. We sometimes refer to it as the "Apking lot." A woods characterized as a mature, climax forest extended over the rear of all four parcels. The owners had no other intentions than to use and maintain their respective parts of the woods for personal use and enjoyment; the woods, in fact, had been a special attraction for the owners of the three residential lots at the time of purchase. No one had any desire to harvest the trees.

The woods extended also onto Murphy's land, which adjoined the Apking lot. Murphy sold the timbering rights to its land to defendant-appellee Gordon Lamb for $3,000, and Lamb in turn agreed to sell and deliver cut logs to a third party for $7,000. The timbering operation was never completed, however, because when Lamb's employees began to cut trees on the Apking lot and the three residential lots, the noise was heard and the Evendale police were called to stop the timbering. The owners later sued Murphy and Lamb for compensatory and punitive damages.

In the course of the jury trial, plaintiffs called David Johnson as an expert in the business of "landscape contracting" (landscape design and landscape planning, or a combination of landscape architecture and ornamental horticulture). Johnson testified that he had spent between one hundred fifty and one hundred sixty hours on the four lots evaluating the damage; he identified the cut trees and the trees destroyed by the timbering operation (whether by falling trees or heavy equipment), observed the condition of all four parcels, and determined how much damage was done to each of them. In all, sixty-eight trees were cut down and three hundred and thirty-one trees were destroyed, or an aggregate of three hundred and ninety-nine trees. Johnson's testimony about the dollar amount of the damage was never completed. His opinion was based in part on a formula developed by the International Society of Arborculture, designed to determine the value of each cut or destroyed tree.[1] To that formula-derived figure Johnson would have added the cost of cleaning up the slash and other debris, the cost of repairing the damaged but not destroyed trees, and the cost of protecting the land disturbed by heavy equipment from erosion by regrading and foresting. Defendants' objections to Johnson's opinion about value of damage were sustained. The court ruled that plaintiffs could not use Johnson's "figures" and could not "get in the restoration cost." When plaintiffs failed to qualify Johnson as an expert timberman, the parties stipulated the "timber value" (by which we believe they meant "stumpage") of the cut and destroyed trees was $7,412.83.

---

[1] The formula of the International Society of Arborculture starts with a measurement of the diameter of a tree four and one-half feet above ground level; this is multiplied by the "established figure of 18" (dollars?); the product is then successively either increased or reduced by three percentages: a percentage assigned for the species of tree, a percentage for the overall condition of the tree, and a percentage for its location (in a woods or on a lawn). As stated later in this opinion, our decision in this case shall not be taken as either approval or disapproval of this method of tree valuation.

Plaintiffs offered no evidence about the diminution in the value of the four parcels from before to after the timbering operation.

After plaintiffs' last witness and the stipulation about "timber" value, plaintiffs brought R.C. 901.51 and 901.99[2] to the court's attention, claiming that they were entitled to treble damages by reason of the reckless cutting. Defendants objected on the grounds that the statutory claim had not been pleaded or substantiated by testimony. The court apparently gave plaintiffs an election between punitive damages and statutory treble damages, and plaintiffs chose punitive damages. The jury returned a verdict against both defendants for $7,412.83 (the stipulated value), allocating the damages thirty-five percent to Lamb and sixty-five percent to Murphy, but answered interrogatories to the effect that neither Lamb nor Murphy was liable for punitive damages.

Plaintiffs duly moved for a new trial, as required under *McHale* v. *Jenkins* (June 29, 1983), Hamilton App. No. C-820705, unreported, in order to call the trial court's attention to the errors claimed by plaintiffs even though they had a favorable verdict. When that motion was overruled, plaintiffs appealed and now assign three errors, two of which have merit. The first claims error in rejecting evidence about "reasonable restoration costs" and in limiting plaintiffs to "the timber value of the trees severed from the land." We sustain it,

and we sustain the third assignment of error insofar as it claims error in overruling their motion for a new trial for the same reason. The gist of the second assignment of error is that plaintiffs were entitled to treble damages under R.C. 901.51, and we overrule it.

## II

We hold that in an action for compensatory damages for cutting, destroying and damaging trees and other growth, and for related damage to the land, when the owner intends to use the property for a residence or for recreation or for both, according to his personal tastes and wishes, the owner is not limited to the diminution in value (difference in value of the whole property before and after the damage) or to the stumpage or other commercial value of the timber. He may recover as damages the costs of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of regeneration within a reasonable period of time. *Heninger* v. *Dunn* (1980), 101 Cal. App. 3d 858, 162 Cal. Rptr. 104; *Thatcher* v. *Lane Constr. Co.* (1970), 21 Ohio App. 2d 41 [50 O.O.2d 95]. See, also, *Adcock* v. *Rollins Protective Services Co.* (1981), 1 Ohio App. 3d 160.

We find persuasive the rule laid down in 4 Restatement of the Law 2d, Torts (1979), Section 929.[3] As applicable

---

[2] R.C. 901.51 and 901.99 read in full:

R.C. 901.51 Injuring vines, bushes, trees, or crops.

"No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.

"In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."

R.C. 901.99 Penalties.

"Whoever violates section 901.51 of the Revised Code is guilty of a minor misdemeanor."

[3] 4 Restatement of the Law 2d, Torts (1979), Section 929, reads in full:

"§ 929. Harm to Land from Past Invasions

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

"(a) the difference between the value of

to this case, this rule is that damages include compensation either for the diminution in value of the land as a whole, or at the owner's option, "the cost of restoration that * * * may be reasonably incurred."[4] The parcels in question, being used for purposes personal to the owners, the damages should include amounts for repairs and restoration even though the market values of the parcels have not been decreased by the trespass and even though the award of damages may be greater than that value. *Id.* at Comment *b*.[5]

The cardinal rule of the law of damages is that the injured party shall be fully compensated. *Brady* v. *Stafford* (1926), 115 Ohio St. 67, 79. If an owner is to be fully compensated for temporary (reparable) damage to his property, then what he expects from the use of it is a vital factor.

"* * * The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale. * * *" *Gilman* v. *Brown* (1902), 115 Wisc. 1, 8, 91 N.W. 227, 229.

Thus, when the cut trees have been used for a specific purpose, such as a sound barrier and a screen from highway traffic, replacement cost is a proper measure of damage. *Rector, Wardens & Vestry of St. Christopher's Episcopal Church* v. *C. S. McCrossan, Inc.* (1975), 306 Minn. 143, 235 N.W. 2d 609. Shade and ornamental trees used for a specific, identifiable purpose are compensable. Annotation (1979), 95 A.L.R. 3d 508. Recovery, however, has not been limited to trees used for "specific uses." It has been awarded

---

the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

"(b) the loss of use of the land, and

"(c) discomfort and annoyance to him as an occupant.

"(2) If a thing attached to the land but severable from it is damaged, he may at his election recover the loss in value to the thing instead of the damage to the land as a whole."

[4] We refer to Section 929(1)(a) of the Restatement 2d. We understand that plaintiffs are not making claims for loss of use, or their own discomfort or annoyance. The alternative set forth in Section 929(2) of the Restatement 2d is not applicable, as we understand plaintiffs' case, because they did not seek damages to the *trees* ("a thing attached to the land but severable from it") in place of either diminution in land value or costs of reasonable restoration.

[5] Comment *b* to Section 929 of the Restatement 2d reads in full:

"*b. Restoration.* Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus if a ditch is wrongfully dug upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, *if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion.*" (Emphasis added.)

when the owner's personal use is neither specific nor measurable by commercial standards, and when the trees form a part of an ecological system of personal value to the owner. *Heninger* v. *Dunn, supra* (two hundred twenty-five trees and vegetative undergrowth destroyed in remote mountain land to make a new road that actually enhanced the value of the land as a whole); *Roark* v. *Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E. 2d 91 (rough and hilly land accessible only by horse or four-wheel-drive vehicle); *Samson Constr. Co.* v. *Brusowankin* (1958), 218 Md. 458, 147 A. 2d 430 ("beautification" trees in a residential lot); *Schankin* v. *Buskirk* (1958), 354 Mich. 490, 93 N.W. 2d 293 (residential lot, apparently vacant; imprecision of the measure of damages is not fatal to claim for reasonable restoration); *Morris* v. *Ciborowski* (1973), 113 N.H. 563, 311 A. 2d 296 (personal residential and recreational use); *Huber* v. *Serpico* (1962), 71 N.J. Super. 329, 339-340, 176 A. 2d 805, 810 (fifty trees cut in a "rear triangular protrusion" from the main residential lot); *Thatcher* v. *Lane Constr. Co., supra* (trees on the rear of a residential lot). A nurseryman's testimony about the "purchase value" of comparable trees and shrubs, including planting, has been allowed. *Tatum* v. *R & R Cable, Inc.* (1981), 30 Wash. App. 580, 583, 636 P. 2d 508, 511. Compensation may be awarded "for injury to young growth, for costs of slash-disposal, and the like," *United States* v. *Firchau* (1963), 234 Ore. 241, 249, 380 P. 2d 800, 804, and for "clean-up costs," *Miller* v. *Wykoff* (1956), 346 Mich. 24, 77 N.W. 2d 264.

All cases, it is to be noted, stress the overall limitation of reasonableness, a concept well established in American jurisprudence.

Timber cut or to be cut for commercial purposes may be valued in several ways: "stumpage" is the value of the undisturbed timber standing or lying on the land[6]; add to that the cost of felling and hauling, to find the value of the logs; add to that, again, all costs of manufacture, to obtain the value of the finished product. Those values, however, are important only to the owner who holds his land in order to exploit its timber. Stumpage is generally a much smaller amount than the cost of replacement or restoration. To limit an owner to stumpage, as the trial court did in the instant case, would be to enforce a timber harvest on the owner without consideration of his/her intended use and his/her real loss.

The trial court erred when it excluded plaintiffs' evidence about the cost of reasonable restoration, including cleanup, repair and regrading, and limited plaintiffs to stumpage value. Plaintiffs are entitled to a new trial. We do not intend by this decision to rule on the reasonableness of the formula of the International Society of Arborculture for the valuation of trees. Johnson's testimony was cut off in *in medias res*, and the issues of pertinency and reasonableness were not raised in the trial or in this appeal.

III

In the second assignment of error, plaintiffs claim the trial court erred when it refused to submit to the jury the issue of treble damages under R.C. 901.51 and when it refused to treble the damages awarded by the jury. We find no merit either in this assignment of error or in that part of the third assignment of error in which an identical claim is made.

R.C. 901.51 creates a new remedy.

---

[6] "Stumpage" is defined as follows in Black's Law Dictionary (5 Ed. 1979):

"The sum agreed to be paid to an owner of land for trees standing (or lying) upon his land, the purchaser being permitted to enter upon the land and to cut down and remove the trees; in other words, it is the price paid for a license to cut."

It makes a person liable "in treble damages for the injury caused" by recklessly cutting, destroying or otherwise injuring shrubs, saplings, trees, etc., on the land of another, in addition to being guilty of a minor misdemeanor, R.C. 901.99. The owner's right to recover treble damages is obviously a new right, separate and apart from his right to recover punitive damages, because it requires proof that the destructive act or acts were done "recklessly" (presumably as defined in R.C. 2901.22[C]) rather than with actual malice. (Whether this new statutory right is in addition to or an alternative to the common-law right to punitive damages is a question we do not reach and do not decide in this case.)

Plaintiffs' amended complaint and their "amended demand" (in which they made definite and certain the dollar amounts they demanded for both compensatory and punitive damages) made no specific mention of their rights to treble damages under R.C. 901.51. Using the most liberal construction of "notice" pleading as allowed by the Ohio Rules of Civil Procedure, we cannot say that the issue was raised in the pleadings. This claim was made to the court *for the first time* after plaintiffs' evidence was fully presented. By failing to bring the claim to the attention of the trial court at a time and under circumstances when the court could take proper measures, plaintiffs waived the claim. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]. Thus, all claims under R.C. 901.51 had been waived prior to that moment in the trial when the court and counsel discussed the contents of the jury instructions and prior to the election offered to plaintiffs to choose between punitive and treble damages.

## IV

We reverse the judgment below and remand this cause for a new trial or other proceedings consistent with this opinion. [7]

*Judgment reversed and cause remanded.*

KEEFE, P.J., and DOAN, J., concur.

---

[7] We note that if a new trial is held, the issue of punitive damages may well have been precluded by the jury's determination in the first trial, since plaintiffs have now had full opportunity to litigate the issue.