OPINION
In September 1994, appellant Elwood Cogswell and appellee Clarence Goss had a brief discussion about appellant cutting chipwood on some property owned by appellee. Thereafter, the parties met at the property to discuss the project. A few days later, the parties again met at the property. This time, appellee brought along his surveyor, Max Graves. Mr. Graves and appellant walked the property to establish its boundaries. A few days later, appellant and his nephew, appellant Gene Cogswell, began cutting hardwood timber in the northwest corner of the property. On September 15, 1994, appellants delivered a $16,800 check to appellee representing sixty percent of the gross profits from the sale of the timber.
On November 10, 1994, appellee, together with his wife, Dorothy Goss, filed a complaint against appellants for trespass. On December 6, 1994, appellants filed an answer and counterclaim for breach of contract.
A bench trial was held on August 1, 1996. By findings of fact, conclusions of law and decision filed June 6, 1997, the trial court granted judgment in favor of appellees in the amount of $33,600 plus interest from September 14, 1994. The trial court also awarded appellees $25,000 in punitive damages and dismissed appellants' counterclaim. Said decision was reduced to judgment entry on July 7, 1997.
Appellants filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT'S VERDICT, RENDERED IN ITS JUDGMENT ENTRY OF JULY 7, 1997, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE REASON THAT PLAINTIFFS/APPELLEES HAVE FAILED TO CARRY THEIR BURDEN OF PROOF WITH RESPECT TO THE ELEMENTS OF TRESPASS AND FOR THE FURTHER REASON THAT THE EVIDENCE CLEARLY DEMONSTRATES THAT THE PARTIES HAD ENTERED INTO A VALID AND ENFORCEABLE CONTRACT FOR THE REMOVAL AND SALE OF TIMBER AND CHIP WOOD.
II
 THE TRIAL COURT ERRED IN APPLYING OHIO REVISED CODE SECTION 901.51 AS A MEASURE IN PLAINTIFFS/APPELLEES, DAMAGES AS DEFENDANTS/APPELLANTS' CONDUCT WAS NOT RECKLESS AS DEFINED BY OHIO REVISED CODE SECTION 2901.22.
III
 THE TRIAL COURT ERRED IN AWARDING PUNITIVE DAMAGES TO PLAINTIFFS/APPELLEES AS THE EVIDENCE DOES NOT SUPPORT A FINDING THAT DEFENDANTS/APPELLANTS CONDUCT WAS WILFUL, WANTON, OR WITH MALICE.
IV
 THE TRIAL COURT ERRED IN AWARDING THE PLAINTIFFS/APPELLEES BOTH STATUTORY TREBLE DAMAGES AND PUNITIVE DAMAGES.
 I
Appellants claim the trial court's judgment was against the manifest weight of the evidence. Appellants argue the evidence failed to support a finding of trespass but did support the existence of a valid enforceable contract. We disagree.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610.
Appellants were found in violation of R.C. 901.51 which states as follows:
 No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injury a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
 In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused.
In its decision of June 6, 1997 under conclusions of law, the trial court specifically found the following:
 By September 8, 1994, the parties had reached an agreement that the chipwood in the area west of the alfalfa field would be cut, chipped and sold with 70% of the proceeds to Cogswell and 30% to Goss. Once the chipwood was cut and the area from which it was taken was cleaned up to Goss' satisfaction, Goss would then permit Cogswell to cut hardwood timber selected by Goss.
 The tentative agreement was to be reduced to a written contract by Goss and signed by the parties. Cogswell was given access to the area west of the alfalfa field near the Bethel Cemetery to make preparations for harvesting the chipwood trees. This agreement Plaintiff's Exhibit 3, was never signed.
 The defendants did not make any attempt to harvest chipwood but instead harvested and sold 160 hardwood trees in a grove to the east of the alfalfa field without permission to do so. There is no question that the plaintiffs had no intent to harvest the hardwood trees that were cut from September 12, 1994, through September 14, 1994, nor did the plaintiffs know that the defendant would harvest those trees. If these trees were to be harvested at all, it is clear this was to occur only after the chipwood cutting was completed.
Central to the case is whether the parties had an agreement on cutting the timber (160 hardwood trees). On this issue, the trial court specifically found the following:
 By September 8, 1994, the parties had tentatively agreed on a 30%/70% split of the sale price of the chipwood with Goss receiving 30%.
* * *
 The defendant began cutting timber early on the morning of September 12, 1994, and worked from early morning until noon and by the 14th had logged out the grove and skidded the logs to the north/south alfalfa field.
* * *
 The testimony of George Kreager (`Kreager') established that in late summer of 1994, he reached an oral agreement with Cogswell to cut lumber trees selected and marked by Kreager from the latter's farm in western Muskingum County. Cogswell, without giving Kreager the opportunity to select and mark the trees, moved his equipment on to his property and began `clear-cutting' the timber. Upon discovery of Cogswell's action, Kreager ordered him off of his land and told him not to return.
The initial discussion between the parties was solely for the cutting of chipwood not hardwood timber. T. at 106-107. At the first meeting at the property, the parties agreed "to chip first and not cut anything until we picked out what timber he could cut to sell." T. at 110. Appellant was to cut and chip until he reached a high-tension power line that runs along the west side of the "V-shaped alfalfa field." T. at 111. The eastern boundary was a yellow barn. T. at 113. Appellee told appellant he was not to cut a piece of timber until appellee was assured appellant had done a satisfactory job on the chipwood project. T. at 114.
Appellee drafted an agreement but it was never signed (Plaintiff's Exhibit 3). T. at 119.[1] Appellee endeavored to locate appellant on three to four occasions to sign the agreement. On the last occasion, appellee discovered cut logs on the east side of the V-shaped alfalfa field. T. at 121. The next time appellee saw appellant was the next day when appellant brought appellee the check. T. at 123-124.
Appellant claims the parties had an agreement of 30/70 (30% to appellee, 70% to appellant) for the chipwood project and the cutting would be east of the alfalfa field. T. at 70, 74. Appellant testified he wanted to cut the big trees first and then "cut the small stuff" to limit clean-up time and effort. T. at 80. Appellant admitted he did not discuss this with appellee. T. at 81. Appellant denied he was told to do the chipwood project first and the cutting of the timber would depend upon his performance. T. at 86. Appellant testified the parties specifically discussed cutting timber during their initial discussion. T. at 182. Appellant testified the parties had an agreement as to the split of the proceeds of the chipwood and timber and appellee was going to put it in writing. T. at 191.
It is not the role of an appellate court to chose between conflicting testimony but to determine if there is sufficient evidence to support the trial court's findings and conclusions.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. From our review, we find substantial credible evidence to support the trial court's finding of no "meeting of the minds" as to the cutting of the timber and a violation of R.C. 901.51.
Assignment of Error I is denied.
 II
Appellants claim the trial court erred in awarding treble damages pursuant to R.C. 901.51 and in finding recklessness. We disagree.
As cited in Assignment of Error I, R.C. 901.51 provides for treble damages if one recklessly destroys flora on the land of another without privilege to do so. R.C. 2901.22 defines "recklessly" as follows:
 (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
The trial court chose to accept appellee's testimony that appellant had been specifically told in detail of the area for the chipwood project and then only upon satisfactory completion could appellant cut timber. By appellant's own testimony, he acknowledged he never intended to clear the land as appellee envisioned and never told appellee he would cut the timber first and then complete the chipwood project. It was clear from the testimony the initial discussion centered solely on chipwood removal as opposed to timber. We find the trier of fact could have found from these facts that appellants had a "heedless indifference to the consequences" of their acts.
Assignment of Error II is denied.
 III, IV
Appellants claim the trial court erred in awarding punitive damages because there was no showing of wilful or wanton conduct or malice, and once treble damages were awarded, punitive damages were inappropriate. We agree.
In its decision under conclusions of law, the trial court specifically found the following:
 Punitive damages in cases such as the present one before the Court are permitted in Ohio both as punishment of the offender and as an example to deter others from engaging in such a course of conduct. Saberton v. Greenwald, 1946 Ohio St. 414 (1946). The Court concludes that the defendant's conduct in the case sub judice and as testified to by Mr. Kreager constitutes a breach of contract and that such actions were wilful and wanton and were conducted with malice and that punitive damages are appropriate and may be awarded in addition to the treble damages provided for in ORC 901.51 Denoyer, et al. v. Lamb, et al. 22 Ohio App.3d 136
(1984). The Court finds that punitive damages of $25,000.00 are appropriate in this case.
Appellants argue there was no testimony of malice. InPreston v. Murty (1987), 32 Ohio St.3d 334, 336, the Supreme Court of Ohio defined malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."
From our review of the record, we find any evidence of hatred, ill will or a spirit of revenge will substantiate a finding of malice. Appellant may very well be a trickster and deceitful in obtaining access to people's property under false pretenses however, there is no doubt from the record that timber cutting was discussed and was contemplated by the agreement drafted by appellee. The trial court found appellants' acts were "at least reckless if not done knowingly and contrary to the understanding and beliefs of the parties." The trial court made no independent finding of what the acts were that constituted malice separate and apart from the reckless or intentional acts therefore, the trial court erred in awarding punitive damages.
On a side note, appellants argue the trial court erred in permitting the testimony of George Kreager. Appellees' counsel argued the Kreager testimony was relative because it would impeach appellant's testimony that he never had trouble with anybody. T. at 172. Evid.R. 608(B) prohibits extrinsic evidence of specific incidents of conduct unless at the trial court's discretion it is clearly probative of truthfulness. We find the Kreager testimony was not offered to test truthfulness but to show other bad acts specifically excluded by Evid.R. 609. Because this testimony was not an issue in any findings of fact or conclusions of law, we find the admission of the testimony to be harmless error. Civ.R. 61.
Assignment of Error III is granted and Assignment of Error IV is moot.
The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed in part and reversed in part.
By Farmer, P.J., Gwin, J. and Wise, J. concur.
 JUDGMENT ENTRY
CASE NO. CT97-0027
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed in part and reversed in part.
[1] Said exhibit corresponds to appellee's testimony concerning the agreement to mark the hardwood timber.