decision and journal entry
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Carolyn Riley Realty, Inc. and Carolyn Riley ("Riley"), appeal the decision of the Summit County Court of Common Pleas awarding damages in the amount of $28,250 for appellees, Allen and Leanne Bartholet. We modify the judgment and affirm as modified.
 I.
This appeal arises out of a tort action for fraud in misrepresenting or concealing the condition of a leaky basement. See Bartholet v. CarolynRiley Realty, Inc. (1998), 131 Ohio App.3d 23, 24-25. The sole issue in this appeal is the calculation of damages. In the original appeal to this court, we reversed the trial court's $28,250 damages award and remanded the case because "the trial court awarded restoration costs as damages without considering diminution in value of the property." Id. at 27.
On January 19, 2001, the trial court analyzed the damages on remand. After reconsidering the diminution in value and costs of restoration, the trial court awarded the Bartholets the same damage award of $28,250.
This appeal followed.
 II.
Assignment of Error:
WHERE THE TRIAL COURT ORIGINALLY AWARDED $28,250.00 IN "COST OF REPAIR" DAMAGES TO FIX A LEAKY BASEMENT IN A $90,000.00 HOUSE WITHOUT TAKING INTO CONSIDERATION THE DIMINUTION IN VALUE OF THE PROPERTY; WHERE THIS COURT THEN REVERSED AND REMANDED WITH INSTRUCTIONS TO REDETERMINE THE AMOUNT OF DAMAGES BY CONSIDERING NOT JUST THE COST OF REPAIR BUT ALSO THE DIMINUTION IN VALUE; WHERE THE TRIAL COURT THEN AWARDED EXACTLY THE SAME AMOUNT OF DAMAGES AS IT HAD ORIGINALLY AWARDED, BASED UPON THE ORIGINAL TRIAL TRANSCRIPT AND WITHOUT TAKING ANY NEW TESTIMONY; AND WHERE THE ONLY EVIDENCE OF DIMINUTION IN VALUE FROM THE ORIGINAL TRIAL WAS $3,000, THE TRIAL COURT ERRED IN FAILING TO FOLLOW THIS COURT'S INSTRUCTIONS UPON REMAND.
On appeal, Riley argues that the trial court failed to follow the instructions of this court on remand. Riley asserts that its expert was the only witness who provided the trial court with testimony regarding diminution in the fair market value of the Bartholets' property. As such, the trial court erred in failing to accept Riley's expert testimony and failed to limit the damages to the diminution in the fair market value of the property. We agree.
The first time this court considered this damages issue, we held that the rule for temporary and reparable injury to real property was:
the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure.
Id. at 25, citing Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238, paragraph five of the syllabus.
In order to determine the diminution in value of the property, the party seeking restoration costs bears the burden of establishing the diminution in the property's fair market value. Reeser v. Weaver Bros. (1992), 78 Ohio App.3d 681, 691. The party seeking restoration costs is required to present evidence of the diminution in the fair market value of their property before and after the injury. Id. Upon such proof, their recovery would nonetheless be limited to an amount not "grossly disproportionate" to the diminution in the property's fair market value.Denoyer v. Lamb (1984), 22 Ohio App.3d 136, 138.The fair market valuation is customarily defined as "the price which would be agreed upon at a voluntary sale by an owner willing to sell to a purchaser willing to buy[.]" In re Appropriation of Easements for Highway Purposes (1963),174 Ohio St. 441, 450.
On remand, the trial court reviewed the trial testimony regarding the value of the Bartholets' property. The trial court adopted the testimony of the Bartholets' expert witness, John A. Harig Jr. ("Harig") as the credible determination of the diminution in value. At trial, Harig testified that he was hired by the Bartholets to inspect their property and render an opinion regarding the value and marketability of the property. Harig referred to a letter he drafted after inspecting the property. In his letter he stated:
I would estimate that well over 75% of the potential buyers would reject consideration of the property after seeing the basement. Of the remaining prospects, [they] would be typical bargain hunters * * * that type of buyer would expect a discount that would represent 25% to 50% over the actual cost of repairs for their aggravation of getting the work done. In addition, they will assign in [their] minds a risk penalty that is very hard to estimate. I would guess at least $5,000.00[.]
At trial, Harig answered a hypothetical question based on repairs totaling $20,000. Based on his method of calculation, the diminution in value to a property with $20,000 in repairs would be approximately $30,000 to $35,000. On cross examination, when asked whether he had determined a fair market value for the house Harig stated "[t]hat was not the scope of my charge." In another portion of his letter, Harig cautioned "I have made no attempt to assign dollar value penalties. The most accurate way to deal with valuation would be to retain an accredited real estate appraiser and request an `as is' and `as repaired' valuation."
Riley's expert witness, Don Baughman ("Baughman"), testified regarding the diminution in the fair market value of the Bartholets' property. Baughman, a state licensed appraiser, inspected the property and appraised the value of the property with the leaky basement at $90,000. He testified that the fair market value of the property with a repaired basement would be $93,000. Baughman stated that "[t]he value is dictated by market, purchasers and sellers in the marketplace." Therefore, the actual cost of repairing the basement is irrelevant to the value of the property.
A careful review of the record reveals that Harig did not present evidence on the diminution in the fair market value of the Bartholets' property. Harig's method of calculation was based entirely on the cost of restoration. At trial, the court summarized "Mr. Harig has testified that based on the costs of the repair, he makes an appraisal 25 percent over that." In its judgment, the trial court relied exclusively on Harig's testimony for its calculation of the diminution in value. The trial court stated:
[u]sing Mr. Harig's calculations, the cost of repairs have been assessed at $28,000. Twenty-five percent of $28,000 is $7,000. The Court [chooses] to use the conservative estimate of 25% of the cost of repair rather than the higher 50% figure. Therefore, according to Mr. Harig's testimony, the diminution in value which can be expected is the cost of repair ($28,000), plus 25% ($7,000) for a total diminution in value of $35,000.
Hence, the trial court below did not rely on evidence from which it could make the required determination whether the cost of restoration or repair exceeded the difference in the market value of the property before and after the injury.
The required exercise is to verify, or lend credence to, the repair cost as a fair measure of damage, by comparing that cost to the before and after valuation. When, as in the Harig testimony, the only valuation is stated as a percentage over the repair cost, the process would accomplish nothing more than comparing the repair cost to itself, satisfying neither the holding of the Ohio Collieries Co. case, nor that previously made by this court in this case.
We find that the trial court did not follow our order on remand and sustain Riley's sole assignment of error. The record reflects that only Baughman testified regarding the fair market value in the property with a leaky basement and with a repaired basement. Baughman's testimony must be utilized to determine whether the cost of restoration is the proper measure of damages in this case. Based on Baughman's evidence of the diminution of fair market, we find that the trial court's award of $28,250 is grossly disproportionate to the $3,000 diminution of value. See Denoyer, 22 Ohio App.3d at 138. We hereby modify the award of damages from $28,250 to $3,000. App.R. 12(A)(1)(a) and (B), and affirm the judgment as so modified.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 ____________________________ WILLIAM R. BAIRD
BATCHELDER, P.J. CONCURS.
CARR, J. DISSENTS.