DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the decision of the Ross County Court of Common Pleas which ordered Defendant-Appellee Carl Baxter to pay Plaintiffs-Appellants Mary and Joe Hardesty $3,500, and ordered Third-party Defendant-Appellee Thomas Johnson to pay the appellants $4,000.
 {¶ 2} The appellants argue that the trial court's judgment was against the manifest weight of the evidence. For the reasons set forth below, we disagree and affirm the well-reasoned judgment of the trial court.
 I. Proceedings Below {¶ 3} Plaintiffs-Appellants Mary and Joe Hardesty own a sizeable amount of wooded acreage.[2] Third-party Defendant-Appellee Thomas Johnson, who is related to the Hardestys, owns wooded property adjacent to theirs.
 {¶ 4} Over the years, the Hardestys and Johnson have repeatedly employed Defendant-Appellee Carl Baxter to harvest timber from their respective properties.
 {¶ 5} This appeal involves two separate instances whereby Baxter removed timber from the property of the Hardestys and Johnson.
 {¶ 6} At the outset, it should be noted that the issues in this appeal surround confusion over the precise boundaries of the Hardestys' numerous wooded lots. Much of this confusion appears to be the result of Mr. Hardesty being unavailable at the time these events occurred.
 {¶ 7} Mr. Hardesty is a retired forester who, by all accounts, seems to be the only one involved in this case that had a clear understanding of the borders of the subject property.
 {¶ 8} During the occurrence of the events that led to this appeal, Mr. Hardesty had become gravely ill and was unavailable to supervise these projects or consult on the precise location of the property boundaries.
 A. Removal of Timber for the Hardestys {¶ 9} In 1998, as a result of Mr. Hardesty's poor health, the Hardestys had incurred substantial medical expenses. In order to pay these expenses, Mrs. Hardesty decided to harvest some of the timber located on their property.
 {¶ 10} Accordingly, she contacted Baxter and they entered into an oral contract as follows: in exchange for $12,000, Baxter would remove timber from two separate lots; Baxter also agreed that he would maintain and clean up the roadway and loading area he used while harvesting the timber.
 {¶ 11} Because Mr. Hardesty was unavailable, Baxter consulted Johnson as to the precise location of the properties where he was to harvest trees. As it turns out, the areas from which Baxter harvested trees were beyond the boundaries of the two precise lots where Mrs. Hardesty had intended for him to work. However, these areas were still owned by the Hardestys.
 B. Removal of Timber for Johnson {¶ 12} That same year, Johnson employed Baxter to harvest timber from property he claimed to own "beyond a ridge." As it turned out, this land, as well as the timber on it, in fact belonged to the Hardestys.
 C. The Pleadings {¶ 13} In December 1999, the Hardestys filed a complaint in the Ross County Court of Common Pleas containing two counts. First, the Hardestys claimed that Baxter breached their oral contract by failing to properly maintain and clean up the roadway and loading area he used when harvesting timber from their property. Specifically, the Hardestys maintained that Baxter's use of the roadway left severe scarring on the land; and, in regard to the loading area, that Baxter failed to remove the treetops he cut from the timber.
 {¶ 14} Second, the Hardestys claimed that Baxter committed trespass and conversion by harvesting timber from the Hardestys' property while working for Johnson.
 {¶ 15} In November 2000, Baxter filed a third-party complaint against Johnson in which he averred that any timber wrongfully harvested from the Hardestys' property was done so unknowingly and solely at the direction of Johnson.
 {¶ 16} In March 2001, the Hardestys filed a "notice of intent to seek treble damages," with the trial court. In this document, the Hardestys asserted that Baxter "recklessly" removed timber from their property while working for Johnson.
 {¶ 17} Subsequently, during the trial of the case, the trial court permitted the Hardestys to orally amend their complaint to add a third count: that Baxter had again committed trespass and conversion of the Hardestys' timber while he was harvesting trees for another adjoining neighbor.
 D. The Trial {¶ 18} At trial, the parties proffered evidence in support of their respective arguments. In addition to the testimony of the parties themselves, surveyors testified and attempted to define precisely where some of the disputed boundary lines were.
 E. Findings of Fact and Conclusions of Law {¶ 19} In May 2001, the trial court issued its judgment entry. In regard to the principal and amended complaints, it found in favor of the Hardestys solely on the first count, concerning the improperly maintained roadway and loading area. Consequently, the trial court required Baxter to pay $3,000 in damages.
 {¶ 20} In regard to the third-party complaint, the trial court found in favor of Baxter. Thus, the trial court required Johnson to pay the Hardestys $4,000 in damages for the wrongfully harvested timber.[3]
 {¶ 21} Subsequently, the Hardestys filed a Civ.R. 52 motion, requesting the trial court to issue separate findings of fact and conclusions of law. The trial court agreed and requested that each party submit proposed findings of fact and conclusions of law.
 {¶ 22} The trial court subsequently found Baxter's submitted proposals to "accurately reflect the judgment of the [trial] court," and, accordingly, it adopted them and made them "part of the judgment entry by incorporation."
 {¶ 23} Initially, the trial court explained that, "No one from the Hardesty family ever informed [Baxter] that [Johnson] did not speak for them, and the Hardestys effectively cloaked [Johnson] with apparent or implied authority to act as their agent with regard to the timber harvesting."
 {¶ 24} And, additionally, the trial court stated the following in regard to the agreement between the Hardestys and Baxter:
 {¶ 25} "[T]here was nothing said or done to indicate that the work be confined to [the two acres intended by Mrs. Hardesty] as opposed to other tracts of Hardesty land and there is nothing to indicate that [Baxter] took more than his fair share pursuant to the agreement, and [the Hardestys] did not claim that they didn't receive the indicated payment."
 {¶ 26} With that in mind, the trial court went on to address each of the three counts set forth in the principal and amended complaints.
 1. First Count {¶ 27} As to the first count, the trial court made the following findings of fact and conclusions of law:
 {¶ 28} "With respect to the road repairs and cleanup of the premises, it is necessary to remember that this is a wilderness area and that some scarring to the land will inevitably result from logging, but that the land will heal and the [treetops] will return to the soil and nourish it. Even [the Hardestys'] witness * * * stated that it was not customary or necessary to remove [treetops]. Accordingly, although a specific amount was not itemized for cleaning the loading areas, $500 is a fair amount to clean up the loading area and allow it to be functional."
 {¶ 29} Additionally, the trial court accepted Baxter's estimate of $2,500 for gravel needed to repair the roadway.
 2. Second Count {¶ 30} As to the second count, the trial court found that the timber was, in fact, wrongfully harvested from the Hardestys' land.
 {¶ 31} However, the trial court found that Baxter was unaware that the timber he was harvesting actually belonged to the Hardestys. Rather, the trial court was convinced by Baxter's assertion set forth in his third-party complaint: that any timber he wrongfully harvested from the Hardestys' property was done so unknowingly and at the direction of Johnson.
 {¶ 32} Accordingly, the trial court held the following: "[I]t would be inequitable to require [Baxter] to turn over the results of his labor * * * and allow [Johnson] to keep the profits of the [Hardestys'] timber. Judgment on the [third-party complaint] is granted in favor of [Baxter] and against [Johnson]."
 {¶ 33} Thus, the trial court ordered Johnson to pay the Hardestys $4,000, a sum derived from Baxter's testimony.
 3. Third Count {¶ 34} As to the third count, the trial court explained that it "allowed [the Hardestys] to add this claim * * *, but the evidence concerning where the land is actually located and what [Baxter] actually did there is confusing, at best, and not convincing or conclusive in any event."
 {¶ 35} Further, the trial court noted that there were other people on the Hardestys' land who had properly harvested timber in the same area where they asserted Baxter had wrongfully removed trees.
 {¶ 36} Thus, the trial court did not award the Hardestys any damages on this count.
 4. Treble Damages {¶ 37} As to the Hardestys' claim that they were entitled to treble damages, the trial court found that, "[The Hardestys'] assertion that [Baxter] `recklessly' harvested timber off their land must fail, on the totality of the record, because the [trial court] finds that recklessness was not proven by the requisite degree of proof."
 II. The Appeal {¶ 38} Appellant filed a timely appeal and assigned the following errors for our review.
 {¶ 39} First Assignment of Error: "The awarding of damages by the trial court was insufficient and against the manifest weight of the evidence."
 {¶ 40} Second Assignment of Error: "The failure to award plaintiffs-appellants treble damages is against the manifest weight of the evidence."
 {¶ 41} In reviewing the decision of a lower court, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." (Emphasis added.) C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus; see Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178.
 {¶ 42} It is well-settled law that, "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given bythe reviewing court." (Emphasis added.) Myers v. Garson, 66 Ohio St.3d 610,614, 1993-Ohio-9, 614 N.E.2d 742; see City of Dayton v. Ronald J. Versic
(Mar. 15, 1996), Montgomery App. No. 15223.
 {¶ 43} With this standard in mind, we will address the Hardestys' assignments of error.
 A. General Damages {¶ 44} In the Hardestys' First Assignment of Error, they argue that the trial court's grant of general damages was against the manifest weight of the evidence. We disagree.
 1. First Count: Maintenance of Roadway and Loading Area {¶ 45} Baxter testified that he in fact agreed to clean up the roadway and loading area. He testified that he hauled three loads of gravel at the cost of $5,619.54. He also delivered and installed all but one corrugated, metal tile to go under the roadway for water to run across the roadway. Baxter conceded that ruts remained in the road. Further, Baxter testified that he was in the business of repairing such roads and to do so would cost $2,500.
 {¶ 46} The Hardestys brought in a witness who disagreed with Baxter and testified that the roadway and loading area needed numerous repairs. The Hardestys provided the trial court with an estimate for $10,823.
 {¶ 47} Clearly, the trial court believed the testimony of Baxter over the Hardestys.
 {¶ 48} As the Supreme Court of Ohio explained in Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view thewitnesses and observe their demeanor, gestures and voice inflections, anduse these observations in weighing the credibility of the profferedtestimony." (Emphasis added.) Id. at 80, 461 N.E.2d at 1275.
 {¶ 49} Therefore, we see no need to second-guess the trial court's judgment in this regard.
 {¶ 50} Additionally, we find the $500 for the repair of the loading area to be more than reasonable, especially in light of the trial court's finding that, "Even [the Hardestys'] witness * * * stated that it was not customary or necessary to remove [treetops]."
 {¶ 51} 2. Second Count: Trespass and Conversion While Working for Johnson
 {¶ 52} The trial court did find that timber was wrongfully removed from the Hardestys' property. However, it found that Johnson should be liable, not Baxter.
 {¶ 53} Again, this issue is one of credibility. See Seasons CoalCo. v. Cleveland, 10 Ohio St.3d at 77, 461 N.E.2d at 1273. The trial court simply found Baxter's testimony that he was unaware of the precise boundary lines, and that he relied on Johnson's instructions of where to harvest timber, to be credible. Indeed, the evidence in support of this conclusion is more than sufficient: Johnson represented to Baxter that he spoke for the Hardesty family; Johnson's wife had painted yellow lines on those trees marking the border between Johnson's and the Hardestys' property; and Baxter's own impression that Johnson's characterization of the border was accurate based on a map and Baxter's own understanding of the borders from numerous years of working in the area.
 {¶ 54} Further, the trial court clearly articulated its basis for the amount it awarded the Hardestys in this regard: it relied on the testimony of Baxter that he received $8,000 for the sale of the timber. Baxter then split this sum with Johnson. Accordingly, the trial court awarded the Hardestys the amount Johnson received from this transaction: $4,000.
 {¶ 55} Conversely, the Hardestys presented an industry witness who testified that the value of the removed trees was actually $26,200.
 {¶ 56} However, the Hardestys' estimate was an aggregate amount for all of the trees which, according to them, were wrongfully removed from their property.
 {¶ 57} Here, the trial court found that only the trees removed while Baxter was harvesting timber for Johnson were wrongfully removed. And, accordingly, the damages award was based solely on that harvested timber. Thus, we find that the damages award, in this regard, was reasonable and is adequately supported by the evidence.
 {¶ 58} 3. Third Count: Trespass and Conversion While Working for Another Neighbor
 {¶ 59} There simply is insufficient evidence to support awarding damages on this claim. A review of the record reveals confusing and conflicting testimony as to whether Baxter wrongfully harvested timber from the Hardestys' property when working for another neighbor. Indeed, it appears from the record that the very land claimed to be the subject of the third count could in fact be the precise land where Mrs. Hardesty employed Baxter to harvest timber.
 {¶ 60} Moreover, evidence was presented that other parties were properly in the area removing timber at the time in question.
 {¶ 61} In sum, we find that the trial court's award of general damages was supported by some competent, credible evidence. See C.E.Morris Co. v. Foley Construction Co., 54 Ohio St.2d at 279,376 N.E.2d at 578. Consequently, we find that the trial court's judgment in this regard was not against the manifest weight of the evidence and we overrule the Hardestys' First Assignment of Error.
 B. Treble Damages {¶ 62} In the Hardestys' Second Assignment of Error they argue that the trial court's denial of treble damages was against the manifest weight of the evidence. We disagree.
 {¶ 63} R.C. 901.51 makes a person liable in treble damages for the injury caused by recklessly cutting, destroying or otherwise injuring trees on the land of another — in addition to being guilty of a minor misdemeanor. See R.C. 901.99; see, generally, Denoyer v. Lamb
(1984), 22 Ohio App.3d 136, 490 N.E.2d 615.
 {¶ 64} The owner's right to recover treble damages requires proof that the destructive acts were done "recklessly," presumably as defined in R.C. 2901.22(C). See Denoyer v. Lamb, 22 Ohio App.3d at 136,490 N.E.2d at 615.
 {¶ 65} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." (Emphasis added.) R.C. 2901.22(C).
 {¶ 66} Once again, this issue is one of credibility. As we have explained above, the trial court specifically found that Baxter was unaware of the precise boundary-lines of the Hardestys' property and that any wrongful harvesting was done only at the direction of Johnson. Because the trial court found that the wrongful harvesting of the Hardestys' timber was done unknowingly by Baxter, it cannot be said that it was done recklessly. We see no need to address this assignment of error any further.
 {¶ 67} We find that the trial court's decision denying treble damages was supported by some competent, credible evidence. See C.E.Morris Co. v. Foley Construction Co., 54 Ohio St.2d at 279,376 N.E.2d at 578. Thus, we find that the trial court's judgment in this regard was not against the manifest weight of the evidence and we overrule the Hardestys' Second Assignment of Error.
 III. Conclusion {¶ 68} For the foregoing reasons, we overrule the Hardestys' assignments of error and affirm the judgment of the Ross County Court of Common Pleas.
Judgment affirmed.
Abele, P.J., and Kline, J.: Concur in Judgment Only.
[2] Apparently, the land that is the subject of this appeal was originally owned by Mr. and Mrs. Hardesty, but was subsequently transferred to Mrs. Hardesty and their daughter in trust. We note that, by way of an amended complaint, Mrs. Hardesty and their daughter were added as plaintiffs to this action in the aforementioned capacity. However, for purposes of clarity, we will refer to the appellants simply as the Hardestys.
[3] We note that the trial court also held that Baxter would be liable for this judgment, "in the event that [Johnson] fails to timely pay this judgment, and in which event * * * Baxter should be indemnified by * * * Johnson."