DUNN ET AL., D.B.A. DUNN & WENDEL ARCHITECTS, APPELLEES, *v.* WESTLAKE, APPELLANT, ET AL.

[Cite as *Dunn v. Westlake* (1991), 61 Ohio St.3d 102.]

(No. 90–1232—Submitted April 16, 1991—Decided July 10, 1991.)

104

*Sirkin, Pinales, Mezibov & Schwartz, Marc D. Mezibov* and *Edmund J. McKenna,* for appellees.

*Frost & Jacobs, Donald McG. Rose, Jill N. Fuchs* and *Douglas E. Hart,* for appellant.

DOUGLAS, J. The first issue presented by this appeal is whether appellant Westlake may be held personally liable for the services performed by Dunn & Wendel Architects. For the reasons which follow, we hold that Westlake can be held personally liable for the services rendered.

It is well-settled in the law of agency that an agent who discloses neither the existence of the agency nor the identity of the principal is personally liable in his or her contractual dealings with third parties. See, *e.g.,* 1 Mechem, The Law of Agency (2 Ed.1914) 1039–1041, Section 1410. See, generally, *Davis v. Harness* (1882), 38 Ohio St. 397; and *James G. Smith & Assoc., Inc. v. Everett* (1981), 1 Ohio App.3d 118, 120–121, 1 OBR 424, 427, 439 N.E.2d 932, 935 (where the existence of the agency and the identity of the principal are unknown to the third party, the dealing is held to be between the agent and the third party and the agent is liable). The reason for this rule is simple. The third party who deals with an agent while unaware of the existence of the principal and the agency relationship intends to deal with the agent, and relies upon the agent's ability to perform. See *id.*

In the case at bar, Wendel, on behalf of Dunn & Wendel Architects, met with Shepherd and Westlake regarding the Village in the Woods project. Dunn & Wendel Architects had previous dealings with Shepherd and Westlake and, on those occasions, had always received payment for its services. As such, Dunn & Wendel Architects eventually entered into a contract to perform work on the Village in the Woods project believing that it was dealing with Shepherd and Westlake in their individual capacities. However, without the knowledge of Dunn & Wendel Architects, Westlake had formed Shelter Concepts as the entity responsible for developing the Village in the Woods project. Dunn & Wendel Architects performed services and looked to Westlake for payment in his individual capacity. Westlake now claims that as an agent for Shelter Concepts, he had no part in the contract negotiations and that, therefore, the debt owed to Dunn & Wendel Architects is either a corporate debt or solely Shepherd's responsibility as the actual negotiator. We disagree.

We find that Dunn & Wendel Architects had reason to rely on Westlake to provide payment for the architectural services. Westlake had personal dealings with Dunn & Wendel Architects leading to the formation of the contract. Westlake also had personal contact with Dunn & Wendel Architects while the services were being performed and, in fact, he assured Dunn & Wendel Architects that it would be paid for its services. Because Westlake failed to disclose the existence of Shelter Concepts and his representative capacity, Westlake is personally liable to Dunn & Wendel Architects as a matter of well-established agency law.

Westlake also argues that he is not liable on the contract because, according to Westlake, payment on the contract was contingent upon the successful closing on a loan for the South Carolina property, a condition which did not occur. Thus, Westlake contends that he was discharged from any obligation to perform under the terms of the agreement. We reject this contention.

The contract language at issue herein is as follows: "As in the past, we [Dunn & Wendel Architects] would defer payment, if necessary, until closing." The court of appeals held, and we agree, that the unambiguous terms of the contract provided Westlake the opportunity to defer payment until the time of closing, but that when it was apparent that the anticipated closing would not occur, payment under the contract became due. We find nothing in the parties' past practices which would persuade us to reach a different conclusion.

Having established Westlake's personal liability for the services rendered by Dunn & Wendel Architects, we now turn our attention to the second (and more important) issue presented by this appeal. Namely, we are asked to determine whether a party who prevails at trial but is, nonetheless, dissatisfied with the result, must move for a new trial in the trial court as a condition precedent to pursuing a cross-appeal in the court of appeals.

In the case now before us, the court of appeals held that Dunn & Wendel Architects could properly pursue its cross-appeal challenging the amount of damages awarded by the trial court even though Dunn & Wendel Architects prevailed on its claim for breach of contract, and even though Dunn & Wendel Architects never filed a motion for a new trial. In so holding, the court of appeals overruled two of its previous cases (*Patrick Media Group, Inc. v. Schneider* [Nov. 8, 1989], Hamilton App. No. C–880386, unreported, 1989 WL 133512, and *Henry v. Serey* [1989], 46 Ohio App.3d 93, 546 N.E.2d 474) which held that a party who prevails at trial cannot pursue a cross-appeal without first filing, in the trial court, a Civ.R. 59 motion for a new trial. The rule established in *Patrick Media Group* and *Serey* was an extension of a rule established in a series of cases from Hamilton County holding that the merits of an *appeal* filed by a party who prevailed at trial could not be addressed by the court of appeals unless the party had moved for a new trial pursuant to Civ.R. 59. See *Brogan v. Hagan* (1986), 26 Ohio App.3d 81, 26 OBR 255, 498 N.E.2d 234; *Fuller v. Cincinnati Gas & Elec. Co.* (Dec. 28, 1988), Hamilton App. No. C–870837, unreported, 1988 WL 138791; *Smith v. Grinker & Sudman* (Nov. 10, 1987), Hamilton App. No. C–870064, unreported; *Krailler v. Carey* (Nov. 26, 1986), Hamilton App. No. C–860013, unreported, 1986 WL 13384; and *McHale v. Jenkins* (June 29, 1983), Hamilton App. No. C–820705,

unreported, 1983 WL 8922.[4]  In the case at bar, the court of appeals determined that application of its rule requiring a prevailing party to move for a new trial in order to preserve alleged errors for appeal was "inappropriate" in cases involving cross-appeals by prevailing parties.  We agree that the application of the rule is inappropriate—but not just for prevailing party cross-appellants.  For the following reasons, we find that the filing of a Civ.R. 59 motion for a new trial is not a necessary precondition for any party to obtain appellate review whether the review is sought by way of appeal *or* by way of cross-appeal filed in response to an appeal by an adverse party.

R.C. 2505.02 defines "final orders."  Final orders are appealable.  R.C. 2505.03.  Nowhere in R.C. 2505.02 or 2505.03 is the appealability of an order conditioned upon the filing of a Civ.R. 59 motion for a new trial.  Furthermore, appeals from final orders are governed by the Rules of Appellate Procedure, where applicable.  R.C. 2505.03(C).  Nowhere in the Rules of Appellate Procedure is the filing of a notice of appeal or cross-appeal conditioned upon a party first filing a motion for a new trial.  See, specifically, App.R. 3 and 4(A).[5]  Indeed, even Civ.R. 59 contains no such requirement.

Simply put, we can find no persuasive authority in the law and rules of appellate practice which would support the proposition, now adhered to by a very limited number of appellate jurisdictions, that a party who obtains judgment in the trial court must first file a motion for a new trial in order to preserve alleged errors for appeal or cross-appeal.  We hold that the filing of a Civ.R. 59 motion for a new trial is not a condition precedent to the filing of a notice of appeal or cross-appeal from an order which is final and appealable.

---

4.  See, also, *Ramos v. Long* (June 29, 1990), Portage App. No. 89–P–2103, unreported, 1990 WL 94881; *Kennedy v. Keaton* (Feb. 16, 1990), Lucas App. No. L–89–102, unreported, 1990 WL 12734; *Woodson v. Woodson* (Mar. 9, 1990), Lucas App. No. L–89–121, unreported, 1990 WL 21762; and *Straka v. Gedeon* (May 5, 1989), Lake App. No. 13–012, unreported, 1989 WL 47887.

5.  App.R. 3(A) provides, in part, that:
"An appeal as of right shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4.  * * *"
App.R. 4(A) provides, in part, that:
"In a civil case, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within thirty days of the date of the entry of the judgment or order appealed from. If service of the notice of judgment and its entry is not made on a party within the three-day period provided for in Civ.R. 58(B), then that party shall file the notice of appeal within thirty days of the date of service.  A notice of appeal filed before entry of such judgment or order shall be treated as filed after such entry and on the day thereof.  If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, whichever period last expires."

As such, we specifically disapprove of *Brogan, supra,* and *Serey, supra,* to the extent that these cases are inconsistent with our holding. herein.

Westlake cites *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794, and *Clevenger v. Huling* (1964), 4 Ohio App.2d 45, 33 O.O.2d 61, 211 N.E.2d 84, affirmed (1965), 3 Ohio St.2d 200, 32 O.O.2d 188, 209 N.E.2d 434, to support the proposition that a motion for a new trial is a prerequisite to obtain appellate review. Neither of these cases supports Westlake's proposition. The court in *In re Guardianship of Love* held that the guardian of the person and estate of an incompetent has no right to appeal from an order terminating the guardianship where there is no showing that the guardian and the ward are adverse parties. *Id.* at syllabus. The court in *Clevenger* recognized the ability of a prevailing party to claim prejudice as to the amount of damages awarded. *Id.* at paragraph one of the syllabus. Furthermore, neither *In re Guardianship of Love* nor *Clevenger* dealt with the question at issue herein.

With respect to Dunn & Wendel Architects' cross-appeal, the court of appeals determined that the amount of damages awarded by the trial court was against the manifest weight of the evidence. The court of appeals remanded the cause for a redetermination of the damages Dunn & Wendel Architects is entitled to receive from Westlake. Westlake claims no error in this regard other than the court of appeals' addressing the cross-appeal in the first instance.

Accordingly, we affirm the judgment of the court of appeals and this cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.