OPINION
This is a case which arises out of suspect business dealings between plaintiff,[1] James Jarvis, and defendants, Anthony Bango, Dennis Mulholland, Ohio Financial Mortgage Corp. ("OFMC"), and Harold Yinger.
In December 1994, Dennis Mulholland was employed as the vice president of OFMC. In late December, Mulholland was contacted by Anthony Bango, who requested Mulholland's assistance in obtaining a $30,000 loan for the purpose of satisfying outstanding liens on commercial property Bango allegedly owned in the "Flats" area of Cleveland, Ohio. Although Mulholland explained that OFMC was not a commercial lender, he offered to call upon some of his associates to see if any would be interested in arranging a loan.
After speaking with Bango, Mulholland contacted Donald Shively, a business associate who worked with the mortgage company of Martin Associates. Mulholland explained that he had been contacted by an individual who needed a short-term commercial loan, and asked Shively if he would be able to help locate someone interested in providing the capital. Not long thereafter, Shively telephoned Mulholland and explained that Harold Yinger, another loan originator at Martin Associates, had a client who was interested in the transaction. Yinger's client was plaintiff James Jarvis.
After speaking with Yinger, Jarvis requested additional information about the terms of the proposed loan. Thereafter, Mulholland faxed to Yinger the following document on OFMC letterhead:
Real Estate Closing
The Flats
Cleveland, Ohio
Repayment Note:
 Upon the closing of this Real Estate Transaction the lender will be repaid the principal sum of $30,000 along with the closing costs agreed upon by all parties in full by the borrower.
Sincerely,
[Signature]
Post Closing
Upon receiving the fax from Mulholland, Yinger contacted Jarvis to discuss the proposed transaction in more detail. As a result of that discussion, Yinger forwarded Mulholland's fax to Jarvis after he added the following handwritten additions:
 $4,000 closing cost = $34,000 total note to be repaid to lender
 $7,000 closing cost = $37,000 to lender $3,000 in points $40,000
Total = $30,000 — Repay $40,000 to lender
Lender to pay commissions @ his discretion.
After receiving the fax and discussing the transaction with Yinger, Jarvis wired $30,015 to Yinger's personal bank account. That same afternoon, Mulholland, Yinger, and Shively made arrangements to meet defendant Bango at his office located within the Continent shopping area located on East Dublin-Granville Road. The three gathered at the agreed-upon time, and Yinger gave a cashier's check in the amount of $30,000 to Mulholland. Mulholland then met privately with Bango. However, after a brief discussion, Mulholland came out of Bango's office with the cashier's check and explained that Bango would not accept the check and had insisted that the loan be in cash only.
After taking back the cashier's check, Yinger returned to his office and called Jarvis to inform him of the turn of events. According to Yinger's deposition testimony, Yinger explained to Jarvis that the borrower was an individual by the name of Anthony Bango and that he knew Bango to have a criminal record. Yinger also testified that he advised Jarvis not to proceed with the loan; however, Jarvis indicated that he was not concerned about either Bango or the terms of the loan, and instructed Yinger to proceed with the loan on a cash basis. According to plaintiff's testimony, however, he did not inquire, nor was he informed as to the identity of the borrower prior to turning over the proceeds of the loan.
After converting the cashier's check into currency, Yinger, Shively, and Mulholland went back to Bango's office with a briefcase containing $30,000 in cash. As before, Mulholland waited for Bango in his office while Yinger and Shively waited downstairs. However, shortly after entering Bango's office, Mulholland became anxious and left with the cash to meet Shively and Yinger who were waiting at a restaurant below. Upon rejoining Yinger and Shively, Mulholland stated that he was uncomfortable dealing with Bango because, in addition to the unusual terms of the loan, Bango had stated that there were other parties to the transaction who wished to remain anonymous. Yinger then advised Mulholland that he was familiar with Bango and that it was common for him to insist on doing business on a cash basis.
Upon receiving Yinger's assurance that Jarvis was willing to make the loan on Bango's terms, Mulholland returned to Bango's office and gave him the $30,000 in cash. After taking the cash, Bango instructed Mulholland to go downstairs and wait for him to return with $34,000 for Jarvis. After waiting some amount of time, Mulholland, Yinger and Shively went back up to Bango's office. Not surprisingly, Bango and the money were nowhere to be found.
Several days later, Bango called Yinger claiming that he had not returned with the money because one of the other unnamed investors had failed to provide an additional $20,000 needed for the closing. Yinger immediately contacted Jarvis to inform him of the conversation with Bango. According to Yinger, Jarvis wanted to know how much Bango would be willing to pay in return for an additional $20,000. After further discussion, Yinger informed Jarvis that Bango offered to pay $70,000 in return for a total loan of $50,000. Thereafter, Jarvis wired an additional $20,015 to Yinger's personal account with instructions to loan Bango the funds.
Yinger, Shively, and Mulholland once again met at Bango's office. Mulholland took the additional $20,000 to Bango, who instructed Mulholland to go downstairs and wait for him to return with $70,000 for Jarvis. Bango again failed to come downstairs with the money. After waiting a short while, all three went back to Bango's office only to find it locked and unoccupied.
Yinger eventually located Bango's residence where he went to discuss Bango's disappearance. When confronted, Bango informed Yinger that there was no real estate transaction and that he needed the money to pay off personal debts. Bango then agreed to sign a handwritten promissory note payable to Jarvis in the amount of $70,000. Although Bango paid Jarvis approximately $8,500, he paid no more. As a result, Jarvis filed this action in the Franklin County Court of Common Pleas asserting causes of action for breach of contract, contract implied at law, breach of fiduciary duty, falsification of corporate documents, violation of R.C. 1707.44, common law fraud, negligent representation, and for engaging in a pattern of corrupt activity. Plaintiff seeks compensatory damages in the amount of $82,530, costs, punitive damages, attorney fees, interest, and statutory damages.
On May 27, 1998, plaintiff filed a motion for summary judgment against Dennis Mulholland and OFMC. Mulholland and OFMC responded by filing a cross-motion for summary judgment on July 16, 1998. After both motions had been fully briefed, the trial court overruled plaintiff's motion, sustained the defendants' motion, and entered judgment in favor of the defendants. Plaintiff now appeals raising the following two assignments of error:
 I. The trial court erred to the prejudice of plaintiffs-appellants by overruling plaintiffs-appellants' motion for summary judgment.
 II. The trial court erred to the prejudice of plaintiffs-appellants by sustaining defendants-appellees' motion for summary judgment.
Plaintiff's assignments of error maintain the trial court erred in granting summary judgment in defendants' favor. When reviewing a motion for summary judgment, this court must determine whether there are any genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. The standard for granting summary judgment is contained in Civ.R. 56(C), which provides:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Accordingly, any party moving for summary judgment must satisfy a three-part inquiry showing: (1) that there is no genuine issue as to any material fact; (2) that the party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
Plaintiff maintains the trial court erred when it granted Mulholland and OFMC summary judgment on plaintiff's claim for unjust enrichment. Unjust enrichment occurs where a party retains money or benefits which in justice and equity belong to another. Accordingly, civil liability arises out of the obligation cast by law upon a person who has received benefits which he or she is not justly entitled to retain.
In order to prevail upon his claim for unjust enrichment, plaintiff must show: (1) that he has conferred a benefit upon the defendants; (2) that the defendants are aware of that benefit; and (3) that the defendants' retention of the benefit would be unjust or unfair. Hambleton v. Barry Corp. (1984), 12 Ohio St.3d 179, 183, citing Hummel v. Hummel (1938),133 Ohio St. 520, 525.
Plaintiff bases his claim for unjust enrichment upon two facts: (1) that Mulholland was in possession of plaintiff's $50,000 before he transferred those funds to defendant Anthony Bango; and (2) that Mulholland and OFMC now have a potential cross-claim against Bango. Both contentions are without merit.
The record establishes that plaintiff's loan was intended for, given to, and in fact retained by, defendant Anthony Bango. In this case neither Mulholland nor OFMC retained any portion of the proceeds of plaintiff's loan. Plaintiff's belief that Mulholland and OFMC received and retained a benefit because Mulholland happened to deliver the proceeds of the loan to Bango is without evidentiary and legal support. Also lacking support is plaintiff's claim that Mulholland and OFMC have been unjustly enriched because they now possess a potential cross-claim against Anthony Bango. Plaintiff fails to explain how the defendants' speculative cross-claim constitutes a benefit conferred upon the defendants by the plaintiff. Absent evidence of a conferred and retained benefit, defendants Mulholland and OFMC are entitled to judgment as a matter of law upon plaintiff's claim for unjust enrichment.
Plaintiff also maintains the trial court erred when it concluded that Mulholland's fax does not constitute a promissory note or other type of negotiable instrument. Pursuant to R.C.1303.03, a negotiable instrument is:
 (A) * * * an unconditional promise or order to pay a fixed amount of money * * * if it meets all of the following requirements:
 (1) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
(2) It is payable on demand or at a definite time.
 (3) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money * * *.
The question of whether a document is a negotiable instrument is determined from the language used on the face of the document by its maker or drawer. Natl. City Bank, Dayton v. Ohio Natl. Life Assur. Corp. (1996), 111 Ohio App.3d 387. In this case, the fax received by plaintiff lacks the indicia generally found in a negotiable instrument. Stated alternatively, the fax fails to comply with the requirements of R.C. 1303.03.
The first fatal omission in the Mulholland fax is the absence of an unconditional promise by either Mulholland or OFMC to pay any amount of money. The mere fact that Mulholland drafted and signed a document providing plaintiff with information about the proposed transaction does not constitute a promise by either Mulholland or OFMC to pay Jarvis, or any other party, the sum of $30,000. R.C. 1303.03(A) clearly states that a negotiable instrument must contain on its face "an unconditional promise or order to pay." As set forth in R.C. 1303.01(11), "`Promise' means a written undertaking to pay money that is signed by the person undertaking to pay." Indeed, even a written acknowledgment of an obligation to pay does not constitute a "promise" unless the obligor also specifically takes responsibility for the payment of the obligation. R.C. 1303.01(11). As there is no promissory language contained in Mulholland's original fax, or in the altered fax containing Yinger's handwritten additions, we are unable to agree with plaintiff's contention that the fax constitutes an enforceable promissory note.
However, even if we were to assume that Mulholland's fax contained a promise to pay, it also fails to indicate that it is payable to either bearer or to order. As set forth by the Ohio Supreme Court over one hundred years ago, "[p]arol evidence is not admissible to add a party to [an] instrument who does not appear upon its face. * * * Whoever takes negotiable paper enters into a contract with the parties who appear on the face of the instrument, and can look to no other persons for payment." Bank v. Cook (1882), 38 Ohio St. 442, 444-445. Additionally, at least one Ohio Court of Appeals has held:
 * * * If one could not depend on the face of the negotiable instrument to determine its nature and effect, those dealing in commercial matters would have "to refer to extrinsic matters to understand and appreciate `the unique legal liabilities associated with [the] instrument and conduct their affairs accordingly'" in violation of the purpose of the Uniform Commercial Code. * * * [Natl. City Bank, Dayton, supra, at 391.]
R.C. 1303.10 provides:
 (A) A promise or order is "payable to bearer" if any of the following apply:
 (1) It states that it is payable to the bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment.
(2) It does not state a payee.
 (3) It states that it is payable to "cash" or to the order of "cash" or otherwise indicates that it is not payable to an identified person.
 (B) A promise or order that is not payable to bearer is payable to order if it is payable to the order of an identified person or to an identified person or order.
In this case, Mulholland's fax does not constitute bearer paper as bearer paper is defined in R.C. 1303.10(A). Moreover, although the fax states that "the lender" will be repaid, it fails to identify that person as required by R.C.1303.10(B). In this case, a third party who might come into possession of the Mulholland fax would be unable to determine who, if anyone, to look to for payment. For these reasons, we are unable to agree with the plaintiff's assertion that the Mulholland fax is a negotiable promissory note.
Finally, plaintiff argues that the Mulholland fax is a unilateral contract between plaintiff, and "an unidentified party as the `borrower.'" Plaintiff contends that Mulholland's fax "clearly solicits a loan of $30,000 from Yinger's `client' (`the lender')." Plaintiff continues his argument asserting that Mulholland and OFMC promised that the "borrower" would repay in full the sum of $30,000, plus closing costs. Plaintiff thus concludes that Mulholland and OFMC are liable "on the instrument to a holder in due course [plaintiff] that took the instrument without notice that the representative [Mulholland and/or OFMC] [were] not intended to be liable on the instrument." Having framed his theory of recovery in this manner, plaintiff's theory must fail as the Mulholland fax is not a negotiable instrument for the reasons discussed above.
We also reject plaintiff's contention that Mulholland and OFMC are liable based upon a contractual theory of recovery. In its written opinion, the trial court found that a contract exists between plaintiff and defendant Anthony Bango. Building upon this finding, plaintiff argues that Mulholland and OFMC are liable to plaintiff because either: (1) Mulholland failed to disclose that he was acting as an agent for another party; or (2) that if he did disclose that he was acting as an agent, that he failed to disclose the identity of Anthony Bango as his principal.
As noted by the Ohio Supreme Court:
 It is well-settled in the law of agency that an agent who discloses neither the existence of the agency nor the identity of the principal is personally liable in his or her contractual dealings with third parties. * * * The reason for this rule is simple. The third party who deals with an agent while unaware of the existence of the principal and the agency relationship intends to deal with the agent, and relies upon the agent's ability to perform. [Dunn v. Westlake (1991), 61 Ohio St.3d 102, 106.]
While we accept plaintiff's characterization of the law of agency, we are unable to agree with plaintiff's conclusion that Mulholland and/or OFMC are liable because they failed to disclose the existence of their agency relationship or the identity of their principal. Although plaintiff claims that he learned Bango's identity only after all of the money had been transferred, the record clearly shows that plaintiff's agent, Harold Yinger, knew of Bango's identity on December 28, 1994, before any money had changed hands.
In an attempt to avoid the obvious implication of this fact, plaintiff attempts to demonstrate that Yinger, acting as his agent, was solely authorized to: (1) negotiate the amount of the return on plaintiff's loan; and (2) deliver the loan money at the closing. Specifically, plaintiff asserts that Yinger was not authorized to determine the identity of the borrower, to conduct any sort of credit risk analysis of the borrower, or to provide advice as to the creditworthiness of the borrower. Thus, plaintiff concludes that to avoid liability as agents for an undisclosed principal, Mulholland and OFMC must prove that plaintiff had actual knowledge of Bango's identity and creditworthiness as "the borrower." In support of this position, plaintiff directs this court's attention to Fay v. Swicker (1950),154 Ohio St. 341, paragraph one of the syllabus, wherein the Court held:
 At common law, ordinarily the knowledge of an agent, received while he is acting within the scope of his authority and in reference to a matter over which his authority extends, is imputed to such agent's principal. [Overruled on other grounds, Saunders v. Allstate Ins. Co. (1958), 168 Ohio St. 55.]
We believe plaintiff's contention that Yinger acted outside the scope of his authority when he came to learn Bango's identity strains credulity. It is undisputed that plaintiff authorized Yinger to negotiate the terms of this sizeable loan on plaintiff's behalf. As a result of his discussions with Yinger regarding the proposed loan, plaintiff transferred funds totaling $50,000 directly to Yinger's personal bank account. On two separate occasions, plaintiff authorized Yinger to attend the attempted closings of the loan and to deliver the proceeds of the loan to the borrower. Indeed, we do not see how it would be possible for plaintiff to authorize Yinger to negotiate the terms of the loan and to attend the closing and deliver the cash, and not impart upon Yinger the responsibility, or at a minimum, the ability to learn the identity of the borrower. Moreover, there is no evidence which shows that Yinger conducted any sort of "credit risk analysis" or investigation of Bango. Rather, the evidence shows that Yinger knew Bango and of Bango's criminal record well before he was contacted by Mulholland and before he contacted plaintiff in regard to this transaction. Thus, Yinger's knowledge of Bango's creditworthiness was knowledge Yinger possessed independently and was not gathered as a result of any investigation of Bango by Yinger. We believe this knowledge is fairly imputed to the plaintiff.
Having conducted an independent review of the trial court's decision, we believe that the court correctly determined that defendants Mulholland and OFMC are entitled to judgment as a matter of law. Accordingly, for the foregoing reasons, we overrule plaintiff's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KENNEDY and BRYANT, JJ., concur.
[1] Although the notice of appeal was filed by plaintiffs James Jarvis, Wesley Jarvis, and Jarvis Pharmacy, Inc., they will be collectively referred to as "plaintiff."