OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. This case involves a dispute between neighboring property owners. Plaintiff-Appellee, Russell Coldsnow, sued Defendant-Appellant, Edmond Hartshorne, for cutting down some of the trees on Coldsnow's property. Hartshorne appeals the decision of the Columbiana County Court of Common Pleas which granted judgment in favor of Coldsnow and awarded treble damages. The issues we must resolve are whether this case must be remanded for a new trial on damages and whether Coldsnow was entitled to treble damages. We conclude the jury's damages award was based on a proper measure of damages and was not excessive and that its conclusion that Hartshorne acted recklessly is not against the manifest weight of the evidence. Thus, the trial court's decision is affirmed.
 {¶ 2} Coldsnow first began living on his property in 1961, when he was eleven years old. That property was transferred to him upon his mother's death in 1981 and he has lived on that property ever since. His property consists of at least two different parcels. He lives on the first parcel on the east side of Augusta Road while the second parcel is on the west side of that road. He and his sons have used that second parcel since he first moved there as a child as a place to hunt and play.
 {¶ 3} Hartshorne's property was to the south of Coldsnow's second parcel. He began living on that property in 1991. At that time, the property belonged to his wife. She and her brother had inherited it from her mother in 1984 and, in 1989, she inherited her brother's interest in the property. Her parents acquired title to the property in 1943. Hartshorne's wife transferred a one-half interest in the farm to him in 1995 and, after his wife's death, Hartshorne was the sole owner of that property.
 {¶ 4} In 1991, Hartshorne began to cut down some trees, one of which was near the fence line between his and Coldsnow's property. Coldsnow complained to Hartshorne about cutting down that tree and Hartshorne stopped cutting down trees near the fence line.
 {¶ 5} In 1995, Hartshorne had problems with people trespassing on his land to hunt. In response, Hartshorne bought some "no trespassing" signs and placed them all around his property. He also spray-painted orange circles on trees near the signs to bring them to people's attention. Some of the trees he spray painted were on Coldsnow's property. Accordingly, Coldsnow complained about the signs and the spray paint to the Hartshornes.
 {¶ 6} In 1997, Hartshorne's wife died. As the result of her death, Hartshorne was almost $100,000 in debt, only $50,000 of which was covered by her life insurance. In order to pay off the remainder, Hartshorne decided to log and sell some of the trees on his property. In 1998, he hired a forester, Ed Romano, to do the logging and agreed to evenly split the profits with Romano after Romano's expenses. Hartshorne asked Romano to selectively harvest the forest. This meant Romano would select certain trees to log in order to thin out the canopy which would allow smaller trees to grow more quickly. He also showed Romano the property lines and asked Romano to only log trees more than 15-20 feet away from those lines. He did not have his property surveyed before asking Romano to log the property and told Romano an old fence line was the property line. Romano saw the fence posts and wire which Hartshorne believed constituted the property line.
 {¶ 7} Coldsnow became aware of the tree harvesting when Hartshorne's property was being surveyed so a portion of it could be sold as another means of paying off his wife's debt. He thought some of the trees which had been harvested were on his property. Subsequently, he hired the surveyor to survey his property and, after the survey was revised, the surveyor told Coldsnow that some of the stumps from trees which had been harvested were on Coldsnow's property.
 {¶ 8} As a result, Coldsnow brought suit against Hartshorne, claiming trespass and a violation of R.C. 901.51. Hartshorne answered and counterclaimed for adverse possession. The matter proceeded to jury trial. Before the case was sent to the jury, the court granted Coldsnow's motion for a directed verdict on Hartshorne's counterclaim. The jury was also not instructed that a verdict that Hartshorne acted recklessly would entitle Coldsnow to treble damages. The jury returned a verdict in favor of Coldsnow in the amount of $11,500 and found Hartshorne had acted recklessly. Accordingly, the trial court granted judgment in the amount of $34,500. Hartshorne filed a timely motion for JNOV challenging the jury's verdict that he acted recklessly which the trial court denied. It is from this judgment that Hartshorne timely appeals.
 {¶ 9} We affirm the trial court's decision because the jury's damages award was reasonable and its conclusion that Hartshorne acted recklessly was not against the manifest weight of the evidence. In a case involving a violation of R.C. 901.51, restoration/replacement cost of the trees is a proper measure of damages when the injured party intended to use the property for residential and/or recreational purposes, according to their personal tastes and wishes. As Coldsnow used his property in this way, he did not first need to show a diminution in value of the land before receiving restoration damages. The jury's award was not excessive as the evidence supported a greater award of damages than it gave. Finally, its conclusion that Hartshorne acted recklessly is not against the manifest weight of the evidence since the evidence shows Hartshorne had a history of ignoring the boundary line between the properties.
 {¶ 10} Hartshorne's first assignment of error argues as follows:
 {¶ 11} "The award of $34,500 in damages is not supported by the evidence and is excessive and contrary to law."
 {¶ 12} Hartshorne's argument could have formed the basis of a motion for a new trial under Civ.R. 59(A). However, he did not move for a new trial. The Ohio Supreme Court has held that a party does not waive an argument on appeal merely because that party did not move for a new trial. Dunn v. Westlake (1991), 61 Ohio St.3d 102, 573 N.E.2d 84, syllabus. Accordingly, we may address the merits of Hartshorne's first assignment of error.
 {¶ 13} Hartshorne argues the trial court's award of damages is improper since it used the wrong measure of damages. According to Hartshorne, the trial court could not award damages without first considering the diminution in value of the land and evidence of that diminution in value was never introduced. Therefore, according to Hartshorne, this court must conclude that the award of damages was not supported by the evidence and is contrary to law. Although he does not specifically state that he is looking for this relief, Hartshorne seeks a new trial on damages. See Dunn.
 {¶ 14} In response, Coldsnow argues that when the trees are a part of a woods which is used for recreational purposes, the proper measure of damages is the replacement cost of the trees and not the diminution in value of the land. According to Coldsnow, this court's recent decision inJohnson v. Hershberger (Sept. 29, 2000), 7th Dist. No. 99-CO-38, is similar to this case and is, therefore, controlling.
 {¶ 15} R.C. 901.51 provides that "[n]o person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land." Any person who does so recklessly is liable in treble damages for the injury caused. Id. Since this statute does not define how a court is to measure the injury caused, this has been an issue repeatedly litigated in Ohio's courts.
 {¶ 16} As both parties point out, this court recently dealt with this issue in Johnson. In Johnson, a property owner sued, among others, a logger who cut down some trees on his land. The trial court ruled in favor of the property owner and both parties appealed. One of the issues on appeal was the proper measure of damages. The trial court's award was based on the replacement/restoration costs of the damaged trees. The defendant made the same argument Hartshorne makes in this case, that the proper measure of damages was the diminution in value of the land rather than the restoration/replacement cost of the trees.
 {¶ 17} This court first noted that the proper measure of damages in this type of case is generally the diminution in value in the land except when that "measure of damages has fallen short of fully compensating the injured party." Id. at 6, citing Denoyer v. Lamb
(1984), 22 Ohio App.3d 136, 22 OBR 375, 490 N.E.2d 615; Kapcsos v.Hammond (1983), 13 Ohio App.3d 140, 13 OBR 173, 468 N.E.2d 325; Thatcherv. Lane Const. Co. (1970), 21 Ohio App.2d 41, 50 O.O.2d 95, 254 N.E.2d 703;Lindsay v. Herren (Mar. 21, 1990), 7th Dist. No. 89 C.A. 75. When the general measure of damages falls short of fully compensating the injured party, courts have turned to alternative measures of damages, including the restoration/replacement value of the trees. Id. This court followedDenoyer and its previous decision in Lindsay and allowed the plaintiff to recover restoration/replacement cost of the trees when "the injured party intended to use the property for residential and/or recreational purposes, according to their personal tastes and wishes." Johnson at 7. "Exceptions to the diminution in market value theory requires appellants to first demonstrate some reasonable expectation to use the land as a personal residence or for a recreational purpose." Lindsay at 2.
 {¶ 18} In Johnson, the plaintiff "testified that he purchased the property for his own personal and recreational use, because it had woods on it and he has used the property for those purposes." Id. at 7. As proof of this intent, Johnson "took the time, trouble and effort to put paths through the property for his own pleasure and that of his family." Id. Accordingly, this court found that the proper measure of damages was the restoration/replacement value of the "`property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural process of regeneration within a reasonable period of time.'" Id. at 6, quoting Denoyer at paragraph one of the syllabus.
 {¶ 19} Hartshorne's argument centers around this court's statement that it is only proper to measure damages by the restoration cost of the trees when the general measure of damages has fallen short of fully compensating the injured party. However, this argument appears to misunderstand the application of these rules both in Johnson and the cases it relied upon. Johnson, Lindsay, and Denoyer all focused on the intended use of the property and did not require that the plaintiff first demonstrate that he would not be fully compensated by the diminution in value in the property. Thus, these cases do not support Hartshorne's argument.
 {¶ 20} Hartshorne also relies upon a recent Ninth District case and claims that court denied restoration costs because the plaintiff failed to first introduce any evidence of the diminution in value. However, the case he relies upon, Bohaty v. Centrepointe Plaza AssocistesLtd. Partnership (Feb. 20, 2002), 9th Dist. No. 3143-M, does not apply to this case. That case does say the general measure of damages in this type of case is that restoration costs are limited by the diminution in value of the property. However, it recognizes the Denoyer exception but concluded it could not apply the exception as the land was zoned commercial. As Bohaty could not apply the exception, it has no bearing on this case.
 {¶ 21} Hartshorne next cites Kapcsos in favor of his argument. Under the Kapcsos exception, restoration costs are only allowed when the trees are ornamental. However, this court specifically rejected applying the Kapcsos exception in Johnson. We continue to do so now.
 {¶ 22} The final case Hartshorne relies upon is Bartholet v.Carolyn Riley Realty, Inc. (Aug. 1, 2001), 9th Dist. No. 20458. According to Bartholet, "[t]he party seeking restoration costs is required to present evidence of the diminution in the fair market value of their property before and after the injury." Id. at 1, citing Reeser v. WeaverBros. (1992), 78 Ohio App.3d 681, 691, 605 N.E.2d 1271. However,Bartholet does not apply to this case for two reasons. First, like theBohaty case, Bartholet does not apply the Denoyer exception to the general rule on damages and, therefore, does not inform us of how we should measure damages when applying that rule. In addition, Bartholet
does not involve a claim under R.C. 901.51 or any other claim involving the cutting of trees. Instead, it is a case dealing with fraud in the selling of a home. See Bartholet v. Carolyn Riley Realty, Inc. (Dec. 30, 1998), 9th Dist. No. 18598. Thus, it is completely inapplicable to the present case.
 {¶ 23} In this case, the evidence supports a finding that Coldsnow used the property for recreational purposes. When he was a child, he played in the woods, hunted squirrels, played with a boat in a little pond, etc. As an adult, he would hunt with his sons on the property, his sons would ride three-wheelers on the property, and they would play there in much the same way as he did as a child. Even Hartshorne admitted he heard Coldsnow's children riding three-wheelers in the woods up until trial. Likewise, the jury's award of $11,500 is supported by the evidence. Coldsnow introduced evidence of the cost of replacement trees and the cost of cleaning up what Romano had left behind. The evidence of the cost of the trees alone was $18,595.54. Given these facts, the damages award was not excessive and was based on a proper measure of damages. Accordingly, Hartshorne's first assignment of error is meritless.
 {¶ 24} Hartshorne's second assignment of error argues as follows:
 {¶ 25} "There was no evidence that Hartshorne acted `recklessly' as required to support the trebling of damages pursuant to Ohio Revised Code Section 901.51."
 {¶ 26} Hartshorne essentially argues the jury's conclusion that he acted recklessly is against the manifest weight of the evidence. Coldsnow responds by citing to evidence he believes supports the jury's conclusion. "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Snader v. Job Master Svcs.
(2000), 136 Ohio App.3d 86, 89, 735 N.E.2d 980. Thus, this court must, reviewing the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 27} R.C. 901.51 allows treble damages when the defendant has acted recklessly. For the purposes of R.C. 901.51, a person acts recklessly when they act as defined in R.C. 2901.22(C). Wooten v.Knisley (1997), 79 Ohio St.3d 282, 290, 680 N.E.2d 1245.
 {¶ 28} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 29} The pertinent question in this case is whether the jury clearly lost its way when it determined that Hartshorne perversely disregarded a known risk with heedless indifference to the consequences of his actions. Considerable evidence was introduced about the nature of Hartshorne's actions since moving to the property in 1991 and how Coldsnow responded to those actions.
 {¶ 30} In 1991, the same year he began living on tthe property, Hartshorne cut down some trees. One of those trees sat along a still visible fence line between he and Coldsnow's property. It had some barbed wire sticking out of it on Coldsnow's side of the property. Believing that since most of the trunk was on his property, the tree was his, he cut the tree down. Coldsnow had a problem with that and made it known to Hartshorne.
 {¶ 31} The next incident occurred in 1995. Hunters were trespassing on Hartshorne's land. In order to prevent this, he put no trespassing signs along the length he believed to be the property line. In addition, he spray-painted large, florescent orange circles on trees near the signs. Sometimes there were no trees near where he though the property line was, so he would spray-paint the nearest tree on his neighbor's land and place the sign near the spray-painted tree. Coldsnow complained to the Hartshornes about the spray-painting and the signs which Hartshorne put on his property. Hartshorne assumed Coldsnow was complaining about the signs and paint which Hartshorne intentionally placed on his property and not those on the fence line. Hartshorne did not put any more signs along that line again.
 {¶ 32} Given this history, it would be reasonable for a jury to conclude that, when telling Romano about the boundary lines in 1998, Hartshorne acted in much the same manner as he had acted before. He merely told Romano where he thought the boundary line was and told him to stay 15-20 feet back from it. He did not ask Coldsnow where he thought the boundary line was or have it established conclusively through a survey. Although Romano testified a property owner normally wouldn't have a survey done unless there was a boundary dispute, the jury could reasonably have concluded that Hartshorne should have expected that there would have been a boundary dispute. Thus, given these facts, we cannot conclude the jury's conclusion that Hartshorne acted recklessly was against the manifest weight of the evidence. Thus, Hartshorne's second assignment of error is meritless.
 {¶ 33} In conclusion, each of Hartshorne's assignments of error are meritless. The jury's award was based on a proper measure of damages and was not excessive. In addition, its conclusion that Hartshorne acted recklessly was not against the manifest weight of the evidence. Accordingly, the trial court's decision is affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.