DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Randy Reichenbach appeals the judgment rendered by the Athens County Court of Common Pleas following a bench trial in this breach of contract action. The court granted judgment in favor of Plaintiff-Appellee Athens Bone Joint Surgery, Inc., and against appellant personally, in the amount of $15,906.
 {¶ 2} Appellant's argument is twofold: 1) that the trial court erred when it found appellant personally liable on the contract although there was evidence that appellee's agent was aware that appellant was acting on behalf of a corporation when the parties entered into the contract; and 2) that the trial court erred by finding appellant and not appellee was first to breach the contract.
 {¶ 3} We find no error in the trial court's judgment and affirm.
 I. Proceedings Below {¶ 4} On November 14, 2000, appellee filed a complaint alleging that appellant breached a contract in which appellant promised to sell and appellee promised to buy an x-ray machine. Following a bench trial, the trial court found in favor of appellee. Appellant appeals that judgment. Our review of the record reveals the following facts, pertinent to the instant appeal:
 {¶ 5} On April 1, 1998, Dr. Mark Knable entered into an agreement with Management Consulting Group, Inc. (MCG) to set up and manage his private orthopedic practice, Plaintiff-Appellee Athens Bone Joint Surgery, Inc., in which Knable and his wife, Joanne Knable, are the only shareholders. Per this agreement, appellee was to open this practice on or before July 1, 1998.
 {¶ 6} Dr. Knable negotiated and eventually dealt with two representatives from MCG: Mark Rowlands and Bill Rineheimer, who were both officers and employees of MCG. According to their agreement, appellee authorized MCG, through Rowlands and Rineheimer, to obtain an office, office furniture, and medical supplies and to hire the employees necessary for the operation of an orthopedic practice. The parties also agreed that after the practice was set up, MCG would continue to manage the financial and administrative aspects of the practice.
 {¶ 7} Due to the nature of his practice, Dr. Knable had to obtain an x-ray machine to service his clients. As part of their arrangement, MCG identified a number of suppliers of x-ray equipment and then discussed with Dr. Knable the various options so that they could reach a decision together regarding from whom to purchase the x-ray machine. Therefore, Rowlands faxed bid solicitations, outlining the specifications for the equipment that Dr. Knable sought, to various suppliers. Dr. Knable suggested to Rowlands the possibility of obtaining such a machine from a colleague, Dr. Smith, who was closing his practice. However, on April 27, 1998, Rowlands had received a significantly lower quote on a better machine from Defendant-Appellant Randy Reichenbach, apparently doing business as Medical Resources. Appellant quoted the price of $26,000 for a used machine, to be "reconditioned by FDA certified Ceitec, Inc.," and for installation of the machine in appellee's office. The communication containing this quote showed that it was from Medical Resources and listed under "Sales Rep" appellant's name, Randy. Nowhere on the quote from appellant was Medical Resources identified as a corporation, nor did appellant disclose that he was a corporate officer.
 {¶ 8} Eventually, Rowlands and Dr. Knable, on behalf of appellee, agreed to purchase the x-ray machine from appellant pursuant to his price quote. Therefore, appellee made the necessary down payment of $15,906, in two installments. Appellant made arrangements with Fred Auger of Ceitec, Inc., to refurbish the x-ray machine and paid Ceitec $13,000 out of appellee's deposit for this service. Appellant retained the balance of the deposit as commission.
 {¶ 9} In response to appellee's purchase order, appellant prepared a "Sales Order Packing Slip" evidencing a number of items being sold to appellee, including the x-ray equipment. This "Sales Order Packing Slip" (sales order) was evidently from a business called The Encore Medical Group, indicating Encore Office Interiors and Medical Resources as branches of the parent group. Once again, the sales order listed appellant, Randy Reichenbach, under the "Sales Rep Name." None of the entities listed on this sales order was identified as a corporation, nor was appellant identified as a corporate officer.
 {¶ 10} At some point after the contract for sale was entered into, appellant visited appellee's orthopedic office. Appellant testified that he was concerned with obtaining verification of the safety factors of the room where the x-ray machine was going to be installed and operated. Among appellant's main concerns was the lead shielding in the walls of the room, as well as the capabilities of the electrical wiring. However, there was nothing in the sales order, price quote, or quote solicitation that would indicate that such a verification was a condition to the sale of the x-ray machine.
 {¶ 11} However, in order to ease appellant's concerns and to expedite the shipment of the x-ray machine, MCG hired Dr. Jerome Dare, a medical physicist and Ohio Department of Health certified radiation expert, to assess whether appellee's room was adequate to house and operate an x-ray machine with the specifications that appellee contracted to buy from appellant.
 {¶ 12} At trial, Dr. Dare testified to several aspects of the room. First, he testified that at the time of his inspection, he could not accurately assess whether or not appellee's room could satisfactorily house an operational x-ray machine. He testified that although he could not verify that the room was adequate, he could not, without further analysis, determine whether the room was inadequate. Dr. Dare testified that he was not able to accurately assess the lead shielding in the walls without an x-ray source, and that in order to determine the lead shielding thickness it would have been helpful to have the x-ray equipment installed in the room.
 {¶ 13} Second, Dr. Dare testified that the State of Ohio does not license the use of x-ray machines; the state merely issues a permit to those who wish to operate an x-ray machine. He further testified that in the past, such permits or registrations have been issued without the state first inspecting the rooms in which they are to be operated. After his inspection, Dr. Dare sent a letter to MCG and appellee stating that his assessment of the room was hampered because the room lacked an x-ray machine with which to test the walls, and that he could perform such an analysis in the future with the necessary radiation source.
 {¶ 14} Sometime around July 1, 1998, it became apparent to appellee and Rowlands that appellant was not going to deliver the x-ray machine in time for Dr. Knable to open his office. Evidently, appellant had not received the x-ray machine from Fred Auger, who was reconditioning it for appellant. Auger notified appellant that he would not deliver the machine until he received the safety specifications for the room in which it was going to be installed. On several occasions, appellant asked for the room safety specifications from Rowlands, who was unable to comply with this request.
 {¶ 15} When it was apparent that he was not going to receive the machine from appellant, Dr. Knable told Rowlands to get the deposit back from appellant. Therefore, Rowlands demanded from appellant the return of the $15,906 deposit appellee had paid him. Appellant, on the other hand, testified that he told Rowlands that the deposit would be nonrefundable because he had to contract with Ceitec, Inc., for its reconditioning. Rowlands testified that appellant never indicated to him that the deposit was forfeitable. In further efforts to retain the deposit, Rowlands asked appellant to sell the machine. However, appellant could not resell the machine because he never received it from Ceitec. In fact, appellant testified that he never saw the machine and that his only assurance that the machine would be delivered was "Fred Auger's word."
 {¶ 16} Due to appellant's failure to timely supply an x-ray machine, and Rowlands' assurances that the deposit would be refunded, appellee arranged for the purchase of another machine from an alternative supplier, Service Net. Eventually, Service Net installed an x-ray machine in appellee's office. Subsequently, the walls of the room were determined to contain the appropriate lead shielding, and the State of Ohio issued a permit to appellee to operate the machine. Appellee never received the return of its deposit from appellant. Appellant made attempts to contact Fred Auger of Ceitec, Inc., but apparently, both Auger and Ceitec's offices have moved and have not been able to be located.
 {¶ 17} Appellee filed a claim in the Athens County Court of Common Pleas alleging that appellant breached the contract for sale of the x-ray machine and demanded the return of his $15,906 deposit. At the conclusion of the bench trial, the court held that a contract did, in fact, exist and that appellant breached by failing to timely deliver the x-ray machine as he agreed to do. The court further found that appellee's deposit was not "nonrefundable" because nowhere on the documentation was it indicated that the deposit was nonrefundable. The trial court also found that appellant was personally liable for the deposit because he did not put appellee or its agents on notice of the fact that he was contracting on behalf of a corporation, or that Medical Resources, Encore Medical Group, or Encore Office Interiors was a corporation.
 II. The Appeal {¶ 18} Appellant timely filed this appeal, raising two assignments of error.
 {¶ 19} First Assignment of Error: "The trial court erred in finding that appellant Randy Reichenbach was personally liable when the record reflects that the agent for appellee Athens Bone and Joint Surgery, Inc. was aware of the corporate nature of the business that he was dealing with on behalf of Athens Bone and Joint Surgery, Inc., although he was unaware of the corporate structure."
 {¶ 20} Second Assignment of Error: "The trial court erred in finding that Athens Bone and Joint Surgery, Inc. did not first breach the contract by its fialure [sic] to verify its compliance with safety regulations for the x-ray room."
 {¶ 21} We will first address appellant's Second Assignment of Error, as its outcome will determine the need to address his First Assignment of Error.
 1.Breach of Contract a.Governing Law {¶ 22} The first question to be addressed is whether the instant case falls under the ambit of Article 2 of the Uniform Commercial Code (UCC) as contained in R.C. 1302. Article 2 of the UCC applies to the sale of goods and not to service contracts. See Allied Erecting Dismantling Co. v. Auto Baling Co. (1990), 69 Ohio App.3d 502,591 N.E.2d 259. Ohio courts apply the predominate purpose test when reviewing a mixed contract for goods and services. The issue is "whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods with labor incidentally involved." Allied Indus.Service Corp. v. Kasle Iron Metals, Inc. (1977), 62 Ohio App.2d 144,405 N.E.2d 307.
 {¶ 23} A review of the evidence shows that the contract primarily was for the acquisition of an x-ray machine with installation and labor incidental to that purpose. The entire cost of the contract was $26,000. The agreement included refurbishment and installation of the machine. However, the primary purpose of the contract was for appellee to acquire an x-ray machine. Therefore, the sale falls under Article 2 of the UCC, as codified by Ohio at R.C. Chapter 1302. Although there was not a written contract detailing the terms of the sale, the evidence offered to show that a contract existed included appellee's quote solicitation, appellant's price quote, and appellant's sales order packing slip. The trial court found that a valid contract existed and that finding will not be disturbed on appeal. The instant case will be analyzed pursuant to the provisions of R.C. Chapter 1302.
 a.Breach {¶ 24} In his Second Assignment of Error, appellant asserts that the trial court's finding that appellee did not breach the contract first by failing to verify the room's compliance with safety regulations was in error. Essentially, appellant argues that the trial court's finding was against the manifest weight of the evidence.
 {¶ 25} An appellate court will not reverse a trial court's judgment as being against the manifest weight of the evidence so long as it is supported by some competent, credible evidence going to all the essential elements of the case. See C. E. Morris Co. v. Foley Const. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178. This standard of review is a highly deferential one; a reviewing court does not decide whether, after reviewing the record, it would have come to the same conclusion as the trial court. Rather, the judgment will be upheld so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. See Campbell v.Marple, Highland App. No. 00CA13, 2000-Ohio-1993. Moreover, the reviewing court presumes that the trial court's factual findings are correct because the trial judge is in the best position to view the witnesses and judge the credibility of their testimony. See Seasons Coal Co., Inc. v.City of Cleveland (1984), 10 Ohio St.3d 77, 79, 461 N.E.2d 1273.
 {¶ 26} The trial court found that appellant did not indicate to appellee or its agent that installation of the x-ray machine depended on government permission to use the room.
 {¶ 27} R.C. 1302.73 provides that:
 {¶ 28} "Except so far as a seller may have assumed a greater obligation and subject to section 1302.72 of the Revised Code on substituted performance:
 {¶ 29} "(A) Delay in delivery or non-delivery in whole or in part by a seller who complies with divisions (B) and (C) of this section is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by * * * compliance in good faith with any applicable * * * governmental regulation or order whether or not it later proves to be invalid.
 {¶ 30} "(B) Where the causes mentioned in division (A) of this section affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.
 {¶ 31} "(C) The seller must notify the buyer seasonably that there will be delay or non-delivery * * *."
 {¶ 32} Appellant argues that appellee breached the contract first by not providing the x-ray room safety specifications to them, and that "the impetus" for his failure to deliver the x-ray machine "was a concern for safety and compliance with government regulations."
 {¶ 33} The trial court correctly found that appellant's concern for compliance of government regulations was not a term or condition of the contract between appellee and appellant. There was some evidence supporting the court's finding that this condition was never included as part of their contract. Both the price quote and sales order prepared by appellant failed to list "compliance with government regulations" as a condition to delivery of the x-ray machine.
 {¶ 34} However, appellant's failure to deliver will not be deemed a breach "if performance as agreed has been made impracticable by * * * compliance in good faith with any applicable * * * governmental regulation or order whether or not it later proves to be invalid." R.C.1302.73(A). (Emphasis added.) "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." R.C. 1302.73(C) provides that the seller must notify the buyer of a delay or non-delivery due to compliance with government regulations seasonably. "An action is taken `seasonably' when it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time." R.C. 1301.10(C). Using these rules as a guide, we find several flaws with appellant's purported desire to comply with government regulations in performing its duties under the contract.
 {¶ 35} Official comment 10 to R.C. 1302.73 states in the relevant part that, "The seller's good faith belief in the validity of the regulation is the test under this Article [R.C. Ch 1302] and the best evidence of his good faith is the general commercial acceptance of the regulation. However, governmental interference cannot excuse unless it truly `supervenes' in such a manner as to be beyond the seller's assumption of risk."
 {¶ 36} First, appellant, although arguing that his nonperformance is excused by compliance with government regulations, failed to cite which government regulation he sought to comply with. Moreover, commercial acceptance of such a regulation is the best evidence of a good faith belief. However, appellee was able to obtain an x-ray machine from an alternative supplier without providing the safety specifications for the room. This demonstrates that other commercial suppliers do not accept any government regulations to mean that x-ray machines cannot be sold or installed until safety specifications of the room are presented to the seller. Moreover, Dr. Dare's testimony established that the State of Ohio merely issues permits to use x-ray machines, and does not condition the issuance of a permit on any mandatory inspection of the room where the x-ray machine will be housed.
 {¶ 37} Second, the last sentence of comment 10 to R.C. 1302.73
indicates that there must be some sort of governmental interference with the contract such that it "truly supervenes" as to go beyond the seller's assumption of the risk. Appellant did not cite to any supervening interference by the government to prevent them from delivering the x-ray unit. There was also evidence that appellant never had the x-ray machine in his possession. Appellant testified that he never received shipment of the machine from Fred Auger of Ceitec, Inc. This is evidence that appellant's nonperformance was not due to anything the government did, but because appellant's contract with Ceitec, Inc., was never completed. Therefore, any allegation of impracticability is nullified by appellant's lack of good faith by his nonperformance under the contract.
 {¶ 38} Finally, there was also some evidence that appellant did not give notice of his non-delivery until well after July 1, 1998. Appellant, however, was aware that appellee required the x-ray machine before July 1, 1998. This was evidence that appellant did not notify appellee of non-delivery within the time agreed. Therefore, any notice of non-delivery due to impracticability would not have been seasonably made. See R.C. 1302.73(C), 1301.10(C).
 {¶ 39} We conclude that there was some competent, credible evidence to support the trial court's finding that appellant breached the contract by failing to deliver the x-ray machine by July 1, 1998.
 c. Remedy {¶ 40} As a remedy, after appellant failed to make delivery, appellee had a right to cancel and recover so much of the purchase price that had been paid. R.C. 1302.85. In so doing, appellee had the right to "cover," by making in good faith and without any reasonable delay a contract to purchase goods in substitution for those due from the seller. R.C. 1302.85(A), 1302.86(A). Appellee in fact did cancel the contract, and as a substitute, purchased a commercially usable machine from Service Net. See R.C. 1302.86, official comment 2.
 {¶ 41} Furthermore, appellee has the right to recover "so much of the purchase price that has been paid." R.C. 1302.85. Appellee paid a $15,960 deposit as part of the purchase price. The trial court found that the deposit was not nonrefundable, as appellant argues. Appellant's price quote and sales order do not indicate that the deposit was forfeitable or nonrefundable in the event that the contract is cancelled. Moreover, it was not until after his breach that appellant informed Rowlands that the deposit was not subject to refund.
 {¶ 42} Appellant argues that the contract was for the sale of specially manufactured goods because appellant arranged for the x-ray machine to be reconditioned by Ceitec, Inc., specifically for appellee, and the deposit was, therefore, nonrefundable. However, where the seller breaches, R.C. 1302 makes no distinction between goods that are specially manufactured and those that are not. Therefore, because appellant breached the contract, appellee had the right to recover that part of the purchase price which was made as a deposit, i.e. $15,906.
 {¶ 43} Appellant's Second Assignment of Error is overruled.
 2. Was Appellant Acting on Behalf of a Corporation? {¶ 44} In his First Assignment of Error, appellant argues that the trial court erred by finding him personally liable to appellee for the $15,960 deposit, when there was evidence that Mark Rowlands, appellee's agent, knew that appellant was acting on behalf of a corporation when he entered into the contract with appellee. Therefore, appellant argues, Rowlands' knowledge, as the agent, should be imputed to appellee as the principal. He argues further that the corporation, and not appellant personally, is liable for appellee's deposit.
 {¶ 45} Appellant asserts that, at the time of formation of the contract with appellee, he was acting in an agency capacity on behalf of Encore Office Interiors, Inc., doing business as Medical Resources. However, for appellant to avoid personal liability on the contract, he was required to convince the trier of fact of his agency capacity. SeeMark Peterson Dental Laboratory, Inc. v. Kral (May 18, 1983),9 Ohio App.3d 163, 164, 458 N.E.2d 1290.
 {¶ 46} At trial, appellant testified that he was the secretary of Encore Office Interiors, Inc., an Ohio corporation of which his wife, Suzanne, was the sole shareholder. He further testified that Medical Resources was a fictitious name, or "d.b.a." for that corporation. However, appellant could not present any documentary evidence from the secretary of state that Medical Resources or Encore Medical Group were registered as fictitious names for Encore Office Interiors, Inc.
 {¶ 47} Appellant argues that there was some evidence that appellee's agent, Mark Rowlands of MCG, knew that appellant was working on behalf of a corporation when they entered into the contract to buy and sell the x-ray machine. Rowlands, however, testified that he did not know that Medical Resources or appellant was a corporation. He testified that he "knew they were a business providing services and providing equipment. But I couldn't speak to the fact that they were actually a corporation."
 {¶ 48} Even if Rowlands did know that appellant was working for a corporation, this does not presume in law that appellant's work activities are exclusively done on behalf of that corporation. See MarkPeterson Dental Laboratory, Inc. v. Kral, supra; Caler v. Dyke (Sept. 7, 1988), 9th Dist. No. 13523. When an agent fails to reveal his agency relationship and the identity of the principal, the agent is individually liable for his or her own acts. See Dunn v. Westlake (1991),61 Ohio St.3d 102, 106, 573 N.E.2d 84. Therefore, "to avoid liability, the agent must disclose to the party with whom he is dealing (1) the agency relationship, and (2) the identity of the principal. If disclosure is not made, the agent may be held liable for contracts entered into in his own name." Mark Peterson Dental Laboratory, Inc. v. Kral, supra, citing James G. Smith Associates, Inc. v. Everett (1981),1 Ohio App.3d 118, 439 N.E.2d 932. Agents can avoid liability only if they conduct themselves in dealing on behalf of the corporation with third persons so that those persons are affirmatively made aware that he is an agent of the corporation and, more importantly, that it is the corporation with which they are dealing, not the agent individually. SeeMontgomery v. Kessinger (Dec. 4, 1990), Jackson App. No. 611.
 {¶ 49} In the case sub judice, there was some competent, credible evidence to support the trial court's conclusion that appellant did not disclose the agency relationship to appellee or its agents. All of the communications from Rowlands to appellant were directed personally to appellant, and not to Encore Office Interiors, Inc. All of the paperwork prepared by appellant was devoid of any indication that he was an agent working on behalf of a corporation. Although not relevant as evidence from the lower court, but curious to us, is that even in his summation of the facts in his brief to this Court, appellant states that "Reichenbach quoted the price," and "Reichenbach forwarded the deposit," not "Encore Office Interiors, Inc., quoted the price" or "the corporation forwarded the deposit."
 {¶ 50} Nevertheless, from the entire record, there is insufficient evidence that appellant affirmatively disclosed his agency status to either appellee or its agents. Not only did appellant fail to disclose the agency relationship, he failed to disclose the principal; he purported to work for three entities: Encore Medical Group, Encore Office Interiors, and Medical Resources. On the other hand, there is some competent, credible evidence to support the trial court's determination that appellant was individually liable on the contract. See AmericanCompressed Steel v. Rider (July 10, 1998), 1st Dist. No.C-960721; DaytonPower Light Co. v. Kumar (Mar. 27, 1998), Montgomery App. No. 16690; Caler v. Dyke, supra.
 {¶ 51} Appellant's First Assignment of Error is overruled.
 III.Conclusion {¶ 52} After reviewing the record of the case sub judice, there was evidence to support the trial court's conclusion that appellant breached the contract by failing to deliver the x-ray machine to appellee. There was also evidence to support the trial court's determination that appellant failed to affirmatively disclose the agency relationship to appellee or its agents.
 {¶ 53} Therefore, both assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ATHENS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Kline, J.: Concur in Judgment Only.